Al GARZA, W. C. Garden Fresh, Inc., and Ralph Mitchell, Appellants,

v.

Troy MITCHELL and Lester Gilleland, Appellees.

No. 1358.

Court of Civil Appeals of Texas, Tyler.

Aug. 21, 1980.

Rehearing Denied Oct. 23, 1980.

Moses Goldberg, Stephen Dittlinger, Southers & Lyons, San Antonio, James Ken Nunley, Dodson, Harpole & Nunley, Uvalde, for appellants.

Samuel D. McDaniel, McDaniel & Travis, Austin, Edward G. Vaughan, Kessler, Vaughan & Pennington, Uvalde, Emerson Banack, Jr., William T. Armstrong, III, Foster, Lewis, Langley, Gardner & Banack, San Antonio, for appellees.

McKAY, Justice.

Our opinion delivered July 24, 1980, is withdrawn and the following substituted therefor.

In 1959 Ralph and Troy Mitchell entered into a partnership for the purpose of conducting farming and ranching operations in Uvalde County, Texas. In 1972 the partnership was abandoned but without an accounting or distribution of the assets of the partnership which included land purchased in the name of the partnership. In December 1975, Troy Mitchell brought an action seeking a dissolution of the partnership and an accounting of its finances. He further sought to be appointed managing partner for the purpose of winding up the partnership affairs.

On January 25, 1977, a hearing was held on Troy Mitchell's motion to appoint a manager to wind up the partnership affairs and an agreement was reached between the partners which was reduced to writing and signed by the trial court and all parties as an agreed order. In relevant part the order stated:

"The Plaintiff, Troy Mitchell, be and is hereby appointed manager of said properties, effective upon date of this Order, with full power of management to the exclusion of Defendant, Ralph Mitchell; with power to lease the whole or any part of said properties for whatever terms and to whatever lessee seems to said manager to be best; and Defendant, Ralph Mitchell, is ordered to do nothing relating to said properties or to the equipment located thereon without prior written authorization from said manager;

\* \* \* \* \* \*

"That the manager shall lease to the Defendant if Defendant is able to meet comparable terms available from other lessees within a three week period from date hereof; if Defendant is not able to meet such terms within such three week period thereafter manager may lease to anyone of his choosing;"

On January 31, 1977, Troy Mitchell executed a letter which stated that Ralph Mitchell had for three weeks the first opportunity to lease the farm and ranch for the sum of $35,275.00. In early February appellant Al Garza contacted Ralph Mitchell for the purpose of growing produce on the land. Ralph Mitchell presented the letter to Al Garza as proof that he was part owner of the land and that he had the right to lease the land. Subsequently Al Garza and Ralph Mitchell reached an oral agreement to grow crops on the land and to share any profits as partners. Accordingly, Al Garza began advancing monies to Ralph Mitchell to begin planting the crops. It it undisputed that Ralph Mitchell never tendered any sum of money to Troy Mitchell as rent as required by the January 25, 1977, court order. On February 22, 1977, Troy Mitchell's attorney notified Ralph Mitchell

by letter that because of his failure to tender the money necessary to lease the Mitchell farm the land would be leased to another lessee. On March 9, 1977, Troy Mitchell entered into a lease agreement with Lester Gilleland whereby Gilleland as lessee agreed to pay a cash rental of $50,-000.00 for a one–year lease. The lease specifically provided that it was entered into pursuant to the January 25, 1977, order and that Troy Mitchell as lessor would ensure Lester Gilleland's peaceful enjoyment of the leased premises. However, Ralph Mitchell refused to recognize the lease and the right of Troy Mitchell or Lester Gilleland to peaceful possession of the property. Troy Mitchell then instituted an action seeking a temporary injunction to prevent Ralph Mitchell from interfering with Lester Gilleland's use of the property. After a full hearing the trial court granted the temporary injunction. The Order Granting Temporary Injunction stated in relevant part:

"... this Court finds on the evidence and the argument presented that the Plaintiff is entitled to the temporary injunction prayed for, for the reason that the Defendant, Ralph Mitchell, has violated the terms of the prior Order of this Court entered on January 25, 1977, in that he has taken actions upon the land involved in this suit without the prior written authorization of the manager appointed by said Order of January 25, 1977, said written authorization being required by said Order, and such actions do prevent the manager appointed by the Order of January 25, 1977, from being able to carry out the responsibilities placed upon him by said Order of this Court.

\* \* \* \* \* \*

"It is accordingly ORDERED, AD-JUDGED, and DECREED that

\* \* \* \* \* \*

"... the Defendant, Ralph Mitchell, cease, desist and refrain from in any way interfering with Plaintiff Troy Mitchell's exclusive, quiet and peaceful possession and operation of the land described in Exhibit 'A' to this Order either through Plaintiff's person or through Plaintiff's

Lessee, Lester Gilleland, and Plaintiff and his said Lessee under lease dated March 14, 1977, are hereby placed in exclusive, quiet, and peaceful possession of said land, with full right to occupy same in its present state and use same and the growing crops thereon pursuant to said lease and as authorized by prior Order of this Court."

Ralph Mitchell appealed the action of the trial court in granting the temporary injunction. The Fourth Court of Civil Appeals affirmed the trial court's order and Ralph Mitchell's application for writ of error was refused by the Supreme Court with the notation of no reversible error.

Thereafter, appellants Al Garza and W. C. Garden Fresh brought this action against appellees Lester Gilleland, Ralph Mitchell, and Troy Mitchell alleging that: (1) Troy Mitchell and Lester Gilleland tortuously interfered with the contract between appellants and Ralph Mitchell; (2) a quasi or implied contract exists between appellants and Lester Gilleland and that appellants should recover the monies advanced to appellees; (3) a quasi or implied contract exists between appellants and appellee Troy Mitchell and that appellants should recover judgment for the enhanced rental value of the land in dispute and; (4) appellants should recover judgment against appellee Ralph Mitchell for breach of contract. Appellee Ralph Mitchell then filed a cross–claim against appellees Troy Mitchell and Lester Gilleland alleging that: (1) Troy Mitchell intentionally and willfully breached the contract between himself and cross–plaintiff; (2) cross–plaintiff should recover judgment against Troy Mitchell and Lester Gilleland under a theory of quasi or implied contract for the value of the work, labor and experience advanced by cross–plaintiff in growing the plants seized by cross–defendants; and (3) cross–plaintiff should recover judgment against cross–defendants Troy Mitchell and Lester Gilleland for maliciously and tortuously interfering with the contract rights of Al Garza and W. C. Garden Fresh, Inc. and cross–plaintiff, Ralph Mitchell.

In response to appellants' action Troy Mitchell and Lester Gilleland filed a general denial and, in response to the cross–action filed by appellee Ralph Mitchell, pled that the action should be abated in its entirety and struck from the pleadings because the doctrine of res judicata barred relitigation of the same issues that were adjudicated in the previous action between Ralph and Troy Mitchell.

Trial was had before a jury and a verdict was returned in favor of appellants Al Garza and W. C. Garden Fresh, Inc. Troy Mitchell and Lester Gilleland filed a motion for judgment non obstante veredicto based upon the ground of res judicata. The trial court granted the motion and decreed that Al Garza and W. C. Garden Fresh, Inc. and Ralph Mitchell take nothing. In its judgment the trial court stated that it granted appellee's motion for the following reasons:

1. Ralph Mitchell did not consummate the option to lease, in that no tender of lease money was made.

2. That this matter was fully adjudicated in No. 11,222, as to who was to be in control and had the right to lease the land in controversy.

3. That Plaintiffs, and Cross–Plaintiff, Ralph Mitchell, had actual knowledge of the agreed order of January 25, 1977.

4. That evidence adduced at the time of trial establishes the affirmative defense of res judicata.

Appellants Al Garza and W. C. Garden Fresh, Inc. and Ralph Mitchell perfected this appeal from the trial court's granting of appellee's motion for judgment non obstante veredicto.

Appellant Ralph Mitchell filed a separate brief in which he contends that the trial court erred in granting judgment n. o. v. on the ground that res judicata was not established as a matter of law, that his claim is not barred by res judicata, that a directed verdict would not have been proper, and that there was competent evidence to support the submission of issues to the jury and the jury's answers.

Appellants Al Garza and W. C. Garden Fresh, Inc. complain by points of error that the trial court erred in granting judgment n. o. v. for Gilleland on the ground of res judicata since the issues in Cause No. 11,222 were not adjudicated in this cause, and the issues here arose subsequent to the temporary injunction granted in Cause No. 11,222, and neither of these appellants were parties in Cause No. 11,222. These appellants further maintain that the temporary injunction was interlocutory in nature and not a final judgment, and that they were not a party to that suit and were not in privity with Ralph Mitchell. Garza also claims recovery under quasi–contract on the ground that the issues in Cause 11,222 were not adjudicated in this case, and further that neither he nor Gilleland were parties in Cause No. 11,222.

Appellee Troy Mitchell in his reply brief asserts that a judgment n. o. v. was properly granted because under no view of the pleadings and evidence were appellants entitled to recover, that the evidence conclusively establishes the affirmative defense of res judicata, and that there was no evidence to support the issues submitted to the jury.

It is the contention of the appellee Lester Gilleland that the action of both Garza and Ralph Mitchell was barred by the doctrine of res judicata and by collateral estoppel, that there was no evidence to establish a recovery by Garza against Gilleland for quantum meruit or unjust enrichment or to support jury findings of value of funds and materials supplied by Garza, or to support a jury finding of damage resulting from contractual interference by Gilleland.

Furthermore, both Troy Mitchell and Gilleland bring several cross–points asserting that, in the event we reverse the judgment of the trial court, the cause should be remanded rather than rendered.

It appears that the basic question underlying the entire controversy presented for our determination is whether appellants Ralph Mitchell and Garza had any right to possession and use of the land in question, and whether a previous order or judgment of the district court (which was affirmed on

appeal) was res judicata or estoppel by judgment as to Ralph Mitchell and Garza. The record reveals that Troy Mitchell and Ralph Mitchell were owners of the land; that by order of the district court Troy was appointed manager of the land as of January 25, 1977, with power to lease the property on whatever terms and to whatever lessee seems best; that Ralph Mitchell was ordered to do nothing with relation to the property or equipment thereon without prior written authorization from Troy; that Troy Mitchell "shall" lease the property to Ralph if Ralph is able to meet comparable terms available from other lessees within a three week period from January 25, 1977; and that if Ralph is not able to meet such terms within such three week period Troy was free to lease to anyone of his choosing.

The record further shows that Ralph Mitchell never tendered any sum of money to Troy for a lease on the property for the year 1977, but instead he and Garza went upon the property and began plowing and planting crops without the consent of Troy. Troy Mitchell then instituted a suit for a temporary injunction; the court granted same and ordered Ralph to "cease, desist and refrain from in any way interfering with" Troy's "exclusive, quiet and peaceable possession and operation of the land." The district court's temporary injunction was affirmed by the court of civil appeals, and writ of error was refused, n. r. e. by the Supreme Court. Troy Mitchell then leased the land to Gilleland, and at that point Garza sued Ralph Mitchell for breach of contract, and sued Troy Mitchell and Gilleland for interference with contractual rights. A jury trial was had,[1] and after the verdict the trial court granted the motion of Troy and Gilleland for judgment n. o. v.

Judge Alexander in *Kirby Lumber Corp. v. Southern Lumber Co.*, 145 Tex. 151, 196 S.W.2d 387–388 (1946) wrote:

"It appears to be a recognized principle of law that where, in a former suit, an essential issue of fact has been determined and adjudicated, the judgment therein will estop the parties from relitigating the same issue in a subsequent suit between the same parties, even though the subsequent suit is upon a different cause of action."

\* \* \* \* \* \*

1. The jury found: 1. Garza advanced funds and furnished materials which were used for planting and cultivating crops on Mitchell's ranch; 2. that Gilleland knowingly accepted the benefits of such funds and materials; 3. that value of funds and materials furnished for benefit of Gilleland was $50,000; 4. that Troy Mitchell knowingly accepted the same benefits; 5. that the value of benefits furnished Troy Mitchell was $15,000; 6. that Troy Mitchell obtained an injunction against Ralph Mitchell on April 5, 1977, which prevented Garza and Ralph from completing the joint venture; 7. that Troy Mitchell acted willfully and intentionally; 8. that Troy's actions were willful and intentional and without right or justifiable cause; 9. that Troy knew that such action would interfere with contractual rights and business relations between Garza and Ralph and would be calculated to result in damage to them; 10. that the intentional act of Troy caused or contributed to cause a break of the contract between Garza and Ralph; 11. that Troy's obtaining the injunction damaged Garza $141,416.49; 12. that in obtaining the injunction against Ralph, Troy acted with conscious indifference to the rights of Garza; 13. that Garza should have $100,000 as exemplary damages; 14. that Garza and Ralph were joint venturers in the farming operations; 15. that Garza furnished money and materials to Ralph for such operations; 16. that Ralph did not fail to provide labor and other services; 19. that Ralph and Garza entered into an oral contract for growing crops in the year 1977; 20. that either Troy or Gilleland knew, or in the exercise of ordinary care should have known, of the existence of the contract, if any, between Ralph and Garza; 21. that Troy or Gilleland or both interferred with the contract for the growing of crops in 1977; 22. that such interference was willful and intentional; 23. that it was a proximate cause of monetary loss to Ralph; 24. that both Troy Mitchell and Gilleland interfered with the contract; 25. that Ralph suffered damages of $100,000; 26. that Troy Mitchell acted with malice in interfering with the contract; 27. that Gilleland acted with malice; 28. that Ralph Mitchell should have $100,000 exemplary damages; 33. that Ralph and Troy entered into a contract whereby Ralph was to have first option to lease the farm; 34. that Ralph had been at all times ready, willing and able to perform under the contract; 35. that Troy failed and refused and still fails and refuses to perform; 36. that Troy's refusal was a proximate cause of monetary loss to Ralph; 37. that Ralph suffered damages of $30,000.

"It is also true that the protection of such a decision as well as its restrictions extend not only to the immediate parties to the suit but also to those who stand in privity with them. 'Privity, in this connection, means the mutual or successive relationship to the same rights of property; that is to say, all persons are privy to a judgment whose succession to the rights of property therein adjudicated are derived through or under one or the other of the parties to the action, and which accrued subsequent to the action.' "

The above rule was stated in another way in *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 362–3 (Tex. 1971):

"The rule of collateral estoppel, or as sometimes phrased, estoppel by judgment, bars relitigation in a subsequent action of fact issues actually litigated and essential to a prior judgment. It has been said that the rule rests upon equitable principles and upon the broad principles of justice. *Cauble v. Cauble*, 2 S.W.2d 967 (Tex.Civ.App.1927, writ dism'd). The rule is generally stated as binding a party and those in privity with him."

See also *Womble v. Atkins*, 160 Tex. 363, 331 S.W.2d 294, 297 (1960); *Mayfield Co. v. Rushing*, 133 Tex. 120, 127 S.W.2d 185, 187 (Comm. of App. op. adopted, 1939); *Rio Bravo Oil Co. v. Hebert*, 130 Tex. 1, 106 S.W.2d 242, 245–6 (1937); *Houston Terminal Land Co. v. Westergreen*, 119 Tex. 204, 27 S.W.2d 526, 528 (1930); *Olivarez v. Broadway Hardware, Inc.*, 564 S.W.2d 195, 198–9 (Tex.Civ.App.–Corpus Christi 1978, writ ref'd n. r. e); 34 Tex.Jur.2d Judgments § 520.

■ Applying the doctrine of estoppel by judgment as set out in the authorities cited the issue of the rights of Troy Mitchell and Ralph Mitchell concerning the management, possession and use and occupancy of the land involved here was decided by the court in Cause No. 11,222; it was affirmed on appeal; the Supreme Court refused writ of error, n. r. e. The judgment gave Troy Mitchell exclusive possession and operation of the land either in person or through Gilleland, his lessee. So far as the record reveals that judgment remains in force and effect and unchanged. In our view Ralph Mitchell cannot again litigate in this cause his right to possession of the land, and he is estopped to do so by the previous judgment.

■ Appellants contend that for the doctrine of res judicata to apply there must be a finding that there was a final judgment on the merits in the prior litigation, that the present parties are the same or in privity to the parties in the prior litigation, and that the cause of action is the same. The doctrine of res judicata applies when there is identity in the thing sued for; identity of the cause of action; identity of persons and parties to the action; and identity of quality in the persons or parties. *Lozano v. Patrician Movement*, 483 S.W.2d 369, 371 (Tex.Civ.App.–San Antonio 1972, writ ref'd, n. r. e.); 34 Tex.Jur. Judgments § 492. But, as heretofore pointed out, where, in a former suit, an essential fact has been decided and adjudicated, the judgment in that case will estop parties in a subsequent suit from relitigating the same issue between the same parties or those in privity with them. *Kirby Lumber Corp. v. Southern Lumber Co.*, supra.

Under the record here Garza was in privity with Ralph Mitchell, and Gilleland was in privity with Troy Mitchell, and such privity resulted in a derivative and mutuality of interest.

Concerning the contention that a judgment in a temporary injunction is not a final judgment the authorities in Texas seem to indicate the finality of the judgment depends upon whether the losing party prosecutes an appeal to the appellate courts.

■ The general rule is that an interlocutory judgment will not support a plea of res judicata; but there are exceptions to this rule. It was said in *Texaco, Inc. v. Parker*, 373 S.W.2d 870, 872–3 (Tex.Civ. App.–El Paso 1963, writ ref'd n. r. e.)

"* * * a dissatisfied litigant (in a temporary injunction case) has a choice–he may appeal or seek a trial on the merits.

Having elected to appeal, he should thereafter be bound by matters fully litigated and determined in the same manner as appeals from final judgments." Where the parties elect in a temporary injunction suit to put in issue a right or a question of fact, as a ground of recovery or defense, and have it directly determined by the court, and the judgment is appealed, presents a well–founded exception to the general rule, *Furr's, Inc. v. United Specialty Advertising Co.*, 385 S.W.2d 456, 458, (Tex. Civ.App.–El Paso 1964, writ ref'd n. r. e.), and such a judgment will support a plea of res judicata or collateral estoppel. *International Longshoremen's Assn. v. Galveston Maritime Assn.*, 358 S.W.2d 607, 613 (Tex. Civ.App.–Houston 1962, no writ); *Wilson v. Abilene Independent School Dist.*, 204 S.W.2d 407, 410 (Tex.Civ.App.–Eastland 1947, writ ref'd n. r. e). See also *Brooks v. Jones*, 578 S.W.2d 669, 672–3 (Tex.1979).

 Appellant Garza asserts that the trial court erred in granting judgment n. o. v. because the defense of res judicata was not established against his recovery under the theory of tortuous interference with his contract with Ralph Mitchell. We disagree with this contention. The record shows that Ralph never obtained a lease on the land by failing to tender the price of the lease to Troy Mitchell. If Ralph had no lease or right to possession or use then he could not grant such a right to Garza. If there was a contract between Ralph and Garza it is our view that neither Gilleland nor Troy Mitchell was guilty of any tortuous interference with such contract. In obtaining a temporary injunction against Ralph and Garza, Troy was simply asserting a legal right, and the assertion of a legal right and acting to protect such right affords no foundation for a recovery of damages for tortuous interference. *Morris v. Jordan Financial Corp.*, 564 S.W.2d 180, 184 (Tex.Civ.App.–Tyler 1978, writ ref'd n. r. e.); *Terry v. Zachry*, 272 S.W.2d 157, 159 (Tex.Civ.App.–San Antonio 1954, writ ref'd n. r. e.); *Montgomery v. Phillips Petroleum Co.*, 49 S.W.2d 967, 972 (Tex.Civ.App.–Amarillo 1932, writ ref'd); *Tidal Western Oil Corp. v. Shackelford*, 297 S.W. 279, 281 (Tex.Civ.App.–Fort Worth 1927, writ ref'd).

 In order to be tortuous interference with the contract of another the assertion of a right must be without right or justification, *Terry v. Zachry*, supra, and "the act of interference to be actionable must have been knowingly done without right or justifiable cause." *Montgomery v. Phillips Pet. Co.*, supra. The assertion of a legal right will not afford a foundation for recovery of damages even though it be with malice. *Tidal Western Oil Corp. v. Shackelford*, supra.

Gilleland contends that there was no evidence to support a recovery by Garza against Gilleland for quantum meruit or unjust enrichment, and that there was no evidence to support the jury finding of the value of funds and materials supplied by Garza. Gilleland argues that the quantum meruit theory of recovery does not apply to him because there was no implied contract between him and Garza; that he had no dealing with Garza. Gilleland argues that more is required under quantum meruit than one party simply receiving benefits of another's work without paying that person for them. We agree.

 The right to recover on quantum meruit is based upon promises implied by law to pay for beneficial services rendered and knowingly accepted. *Davidson v. Clearman*, 391 S.W.2d 48 (Tex.1965). The necessary elements of recovery under quantum meruit were set out in *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex. Civ.App.–Corpus Christi 1977, writ ref'd n. r. e.): "1) Valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) *under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.* (Emphasis added). See also *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80, 86 (Tex.1976); *Crockett v. Sampson*, 439

S.W.2d 355, 358 (Tex.Civ.App.–Austin 1969, no writ); 98 C. J. S. Work & Labor § 8.

It is readily noted that the facts of this case do not constitute a quantum meruit implied contract applicable to Gilleland. Garza supplied funds to Ralph Mitchell to carry out their purpose of growing vegetables on the Mitchell land. When the district court ruled that Troy Mitchell was entitled to possession and control then Gilleland paid $50,000 to Troy for the lease for the year 1977. No services were rendered or materials furnished by Garza to Gilleland since Gilleland was not in possession or entitled to possession at that time; therefore, Gilleland did not accept them at that time. Nor were there circumstances which reasonably notified Gilleland that Garza in performing such services was expecting to be paid by Gilleland. In addition, the court's order provided that Troy and Gilleland had exclusive possession of the land with the right to occupy it and use it and the growing crops thereon. In our view Garza was not entitled to recover anything from Gilleland under the doctrine of quantum meruit.

According to the record Garza knew Troy Mitchell was made manager of the farm; Garza had not talked to Troy and had not tendered him any money for the lease; Garza had not communicated with Troy by letter. Garza had not paid any lease money to anyone, and no such lease money was paid by Garza when he learned Troy Mitchell had made a lease with Gilleland. In our view the above authorities demonstrate that Garza was not entitled to recover any damages from Troy Mitchell under the theory of quantum meruit.

Garza pled and maintains on appeal that Gilleland was liable for receiving the proceeds of the sale of crops and vegetables on the theory of unjust enrichment and/or quasi–contract. The record discloses that there were admitted into evidence checks totaling more than $23,000 which Garza testified were spent in preparing the land, buying seed and herbicides, and Garza testified he spent approximately $45,000 for these items. Gilleland testified that after he came into possession of the land he cultivated, irrigated, gathered and sold the crops and vegetables for a gross of some $48,000. The record also reveals that Gilleland paid Troy Mitchell $50,000 for the lease on the land. In our view Garza is not entitled to any recovery based on the theory of unjust enrichment and/or quasi–contract.

As we have heretofore pointed out Ralph Mitchell and Garza had no right of possession of the land, and when they went upon the land and planted crops they were trespassers. The general rule is that a trespasser who plants crops on the land acquires no title or interest in such crops as against one lawfully entitled to possession. 25 C. J. S. Crops § 8; 21 Am.Jur.2d Crops § 30; 17 Tex.Jur.2d Crops § 37. See *Whitfield v. Gay*, 253 S.W.2d 54, 56 (Tex.Civ.App.–Eastland 1952, no writ).

In *John Hancock Mutual Life Ins. Co. v. Dameron*, 131 S.W.2d 122, 124 (Tex.Civ.App.–Waco 1939, no writ) the court held that growing oats, planted by one not entitled to possession, passed to owner upon foreclosure of deed of trust. See also *Love v. Perry*, 111 S.W. 203, 205 (Tex.Civ.App.–Dallas 1908, no writ); *Duncan v. Jouett*, 111 S.W. 981, 983 (Tex.Civ.App.–Dallas 1908, no writ); *Pinchback v. Swasey*, 194 S.W. 446, 448 (Tex.Civ.App., Beaumont 1917, writ refused).

We have considered all of appellants' points and we conclude that the trial court did not err in rendering judgment n. o. v. for appellees.

Judgment of the trial court is affirmed.