**Opinion filed April 2, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00240-CV
_____

**THE ASHLEIGH COMPANY, LLC AND THE DAREN-ORDON COMPANY, LLC, Appellants**

**V.**

**JASON STEWART AND TARRAH ASHLYN STEWART, Appellees**

**On Appeal from the 32nd District Court**

**Nolan County, Texas**

**Trial Court Cause No. 19760**

## M E M O R A N D U M   O P I N I O N

This appeal concerns a written agreement between the parties to this appeal and the entitlement to $34,572.41 in interpleaded funds—the proceeds from the sale of a past cotton harvest. After a bench trial, the trial court entered a final judgment in favor of Appellees, Jason Stewart and Tarrah Ashlyn Stewart, and awarded them the interpleaded funds.

In six issues, Appellants, the Ashleigh Company, LLC and the Daren-Ordon Company, LLC (the companies), contend that the trial court erred because: (1) the written agreement violated the statute of frauds; (2) a 2014 e-mail from Arlon terminated that agreement; (3) the Stewarts fraudulently induced Arlon, on behalf of the companies, to execute the agreement; (4) it excluded Mary Groves's testimony; (5) the Stewarts were unjustly enriched by the enforcement of the agreement; and (6) the Stewarts were not entitled to attorney's fees because they failed to segregate recoverable and unrecoverable fees. We affirm.

## I. *Factual Background*

D. Arlon Groves is the managing member of the Daron-Ordon Company and Mary Groves is the managing member of the Ashleigh Company; the companies own the subject farm, which is in Scurry County. In 2013, the companies executed a written agreement with Jason, which provided that (1) Jason would receive 75% of the crop proceeds and the companies would receive 25%, and (2) "[u]nless notified in writing by certified mail by August 1 of either party's desire to change, the crop lease agreement shall renew automatically for the next crop year."

The parties dispute the circumstances surrounding the execution of the agreement. The companies assert that Arlon requested that several terms be included in the agreement—a three-year lease term, the preservation of the vineyard, and a requirement that Jason farm the property in a good and workmanlike manner. Jason mailed the agreement to Arlon and Mary, and Arlon discussed the agreement's terms with Jason over the phone before he signed it. Arlon, a practicing attorney, testified that he was suffering from diabetes and cataracts at the time and could not see well enough to read the agreement himself. According to Arlon, Jason assured him that the agreement included the terms he had requested. Mary was present during the call, which occurred over speakerphone. Arlon acknowledged that Mary could have read the agreement to him but did not, and that "blind people can sign valid

2

agreements" if "somebody they know and trust reads it to them." He also testified that the agreement was unsigned when he received it. Arlon testified that he read the agreement after his cataracts were removed, but he could not recall when they were removed—he estimated sometime in 2014.

Jason gave a different account. He testified that he mailed multiple signed copies of the agreement to Arlon and Mary and that they never questioned the terms or requested the inclusion of the alleged additional conditions. Jason admitted it was possible that they had a phone conversation and discussed the terms of the agreement, but he insisted that the agreement accurately recited the terms they had discussed. The trial court found that Arlon's testimony regarding his reliance on Jason's alleged misrepresentations lacked credibility.

On August 24, 2014, Arlon sent a contentious e-mail to Jason regarding equipment that was missing from the property and accused Jason of using it elsewhere without authorization; the e-mail also contained the following statement:

> Accordingly, as stated in the immediately preceding e-mail, your lease of my farm is terminated immediately, effective this 24th day of August, 2014, at 12:00 noon. You are not to engage in any farming operations, including preparatory work, of any kind on my farm hereafter.

> After you have returned all my farm equipment, materials, and supplies - everything which was on the place when you rented it - neither you nor any of your employees, agents[,] or anyone working on your behalf should ever again enter my farm, for any reason.

Jason responded to Arlon's e-mail and explained that he had moved the equipment into storage as he had previously informed Arlon and Mary. After this exchange, the parties continued to operate under this agreement for the 2014 and 2015 crop years.

In March 2016, Jason discovered that Arlon had engaged Nelson Eckert to farm the property for that year. Arlon also sent a letter to the United States

Department of Agriculture's Farm Service Agency (FSA), which stated that the companies' "3-year lease" with Jason had "expired as of the end of the year 2015" and that the farm was leased to Eckert for 2016 "for a term of 3 years." Arlon later testified that he had not terminated the agreement in writing by August 1, 2015.

Jason informed both the companies, Arlon, and Eckert that he retained the farming rights under the lease agreement, and he intended to exercise them. Despite this, Eckert planted cotton on the farm for the 2016 crop year, after both Jason and Eckert separately performed some preparatory work. Jason harvested the 2016 cotton crop and had it ginned by Central Rolling Plains Co-Op in Nolan County. When the companies and the Stewarts both claimed ownership of the crop modules, Central Rolling Plains filed an interpleader action, which ultimately resulted in the underlying bench trial and final judgment.

## II. *Standard of Review*

In an appeal from a judgment after a bench trial, the trial court's findings of fact have the same weight as a jury verdict, and we review the sufficiency of the evidence to support any challenged findings of fact by using the same standards that apply to jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *see Villa v. Villa*, 664 S.W.3d 415, 417 (Tex. App.—Eastland 2023, no pet.). We review the trial court's conclusions of law de novo. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014). We will uphold the trial court's judgment, even if we determine that a conclusion of law is erroneous, if the judgment may be sustained on any legal theory that is supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

When a party challenges the legal sufficiency of the evidence to support an adverse finding for an issue on which he did not have the burden of proof, the party must demonstrate that no evidence supports the adverse finding. *Gonzalez v. Sanchez*, 717 S.W.3d 516, 526 (Tex. App.—Eastland 2025, no pet.) (citing *Exxon*

4

*Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011)); *Airpro Mobile Air, LLC v. Prosperity Bank*, 631 S.W.3d 346, 350 (Tex. App.—Dallas 2020, pet. denied). Evidence is legally insufficient to support a finding of fact when: (1) the record discloses a complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 783 (Tex. 2020); *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In making this determination, we credit all favorable evidence if a reasonable factfinder could and disregard all contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

When reviewing a factual sufficiency challenge, we "must consider and weigh all of the evidence," not just the evidence that supports the factfinder's finding. *Gonzalez*, 717 S.W.3d at 527 (quoting *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998)). We must review the evidence in a neutral light. *Id.* (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001)). If we set aside a judgment on the basis that a vital finding is not supported by factually sufficient evidence, we must detail the evidence that is relevant to the issue and specify how the contrary evidence greatly outweighs the evidence that supports the finding. *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). A party that challenges the factual sufficiency of an adverse finding on an issue for which it had the burden of proof must demonstrate "that the adverse finding is against the great weight and preponderance of the evidence." *Id.* (quoting *Dow Chem.*, 46 S.W.3d at 242). We must consider and weigh all the evidence, and we may only set aside a verdict "if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence" as to be clearly wrong and manifestly unjust. *Dow Chem.*, 46 S.W.3d at 242 (citing *Pool*, 715 S.W.2d at 635).

III. *Analysis*

The companies challenge the enforceability of the agreement, contending that (1) it is void under the statute of frauds, and (2) its execution was fraudulently induced.

A. *The Statute of Frauds*

In their first issue, the companies contend that the agreement is unenforceable because it violates the statute of frauds. The companies also specifically challenge the trial court's finding that the agreement contemplated a crop year as the measure of time for the agreement's enforceability. The Stewarts respond that the lease is for a "crop year," which is less than a calendar year, subject to termination by either party during each crop period, and therefore the statute of frauds is not applicable.

Whether a contract is subject to the statute of frauds is a question of law that we review de novo. *Nat'l Prop. Holdings, LP v. Westergren*, 453 S.W.3d 419, 426 (Tex. 2015). The statute of frauds requires that to enforce an agreement for a lease of real property that exceeds a one-year term, the agreement must be in writing. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(5) (West 2023). The party that pleads and seeks to rely on the statute of frauds—the companies in this case—bears the initial burden to establish its applicability. TEX. R. CIV. P. 94; *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). To determine whether a lease is subject to the statute, we examine the length of the agreement's term and compare the date when the agreement becomes effective to the date when its terms are completed. *See Stovall & Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 799 (Tex. App.—Dallas 2013, no pet.) (citing *Young v. Ward*, 917 S.W.2d 506, 508 (Tex. App.—Waco 1996, no writ)); *see also Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex. 1974).

A lease for a one-year term that includes an option for the lessee to extend the term is held to be a demise for the entire period and thus within the statute of frauds.

6

*See McDonald v. Roemer*, 505 S.W.2d 698, 699 (Tex. App.—San Antonio 1974, no pet.) (citing *Bateman v. Maddox*, 26 S.W.51, 53 (Tex. 1894)). But when either party may terminate the lease at the conclusion of the primary term, the possibility of renewal is not included in the measurement of the lease's duration for statute-of-frauds purposes. *See id.*

The companies argue that the agreement is an "evergreen" lease, which continues from calendar year to calendar year and is not limited to the current crop year. However, the agreement refers only to a "crop year." It states that the lease "begin[s] with the 2013 crop year" and that it shall automatically renew "for the next crop year." No other measure of time is recited in the agreement. Jason testified that a crop year—the time from preparing and planting to when harvest occurs—was less than a calendar year, which is supported by Eckert's testimony that he began farming the land in late February 2016 and the cotton was "stripped" and harvested in November 2016.[1] Thus, legally and factually sufficient evidence supports the trial court's finding that the "measured time" in the agreement was by a crop year rather than a calendar year. There is more than a scintilla of evidence to support the trial court's finding, and the finding is not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Pool*, 715 S.W.3d at 635; *Gonzalez*, 717 S.W.3d at 527.

Even assuming that the lease is measured by a calendar year—and we do not hold that it is—it permits either party to terminate the lease at the end of each term by providing notice to the other by August 1.

This lease mirrors the one in *McDonald*, which automatically renewed and continued from year to year unless either party provided notice of termination.

---

[1]Eckert further confirmed that "crop-sharing agreements" such as the one used by the companies and Jason, were common in the industry and "there was nothing about [the] agreement that was not customary for this part of the world."

7

*McDonald*, 505 S.W.2d at 699. As in *McDonald*, because either party in this case could terminate the lease before each renewal period, the renewal provision is not treated as a demise for the full term. *Id.* And because the lease did not create a term that exceeded one year, the statute of frauds does not apply. *Id.*; *see Stovall*, 409 S.W.3d at 799–800 (holding that oral leases for a term that is less than a year or that could be performed within one year from the date of the agreements were not barred by the statute of frauds).

Accordingly, we overrule the companies' first issue. In doing so, we need not address their remaining statute-of-frauds argument. *See* TEX. R. APP. P. 47.1.

B. *Fraudulent Inducement*

In their third issue, the companies contend that the trial court erred when it concluded that Jason did not fraudulently induce them to execute the agreement.

A fraudulent inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018).

The companies assert that Jason made a material misrepresentation when he "falsely responded [y]es" when Arlon "specifically asked [Jason] whether the contract contained" Arlon's additional terms, "fully aware that [Arlon] was unable to read the contract and was relying on his assurances." The trial court found that Arlon's testimony that he relied on Jason to explain the agreement lacked credibility, and that Jason did not misrepresent the terms in the agreement. The record supports the trial court's findings. *See Villa*, 664 S.W.3d at 417 (A trial court's findings of fact have the same weight as a jury's verdict.). Jason denied that he made the alleged misrepresentation, and Arlon testified that, while he allegedly "couldn't read" the

8

agreement, he was practicing law at that time and "generated documents . . . know[ing] what [they] say[]" and he further confirmed that Mary could have read the agreement to him.

On this record, we hold that the trial court correctly concluded that Jason did not fraudulently induce the companies into executing the agreement. *See Tenaska*, 437 S.W.3d at 524; *SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534, 539 (Tex. App.—Eastland 2012, no pet.) ("We independently evaluate conclusions of law to determine whether the trial court correctly drew the legal conclusions from the facts.").

Accordingly, we overrule the companies' third issue.

C. *Exclusion of Hearsay Testimony*

In their fourth issue, the companies contend that the trial court erred when it excluded Mary's testimony regarding the phone conversation between Arlon and Jason discussed above. We review a trial court's evidentiary rulings for an abuse of discretion, and we must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *See Gonzalez*, 717 S.W.3d at 527 (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). We will not reverse based on a trial court's erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *Id.* (citing TEX. R. APP. P. 44.1).

The trial court sustained the Stewarts' hearsay objection to Mary's testimony about the conversation. We note that the companies did not identify a valid, legal basis to admit Mary's testimony—either as non-hearsay or under an exception to the hearsay rule.

"Hearsay" is an out-of-court statement that is offered to prove the truth of the matter asserted in the statement. *See* TEX. R. EVID. 801(d). Mary testified that she overheard the phone conversation between Arlon and Jason regarding the terms of the lease before it was executed. Counsel for the companies asked, "What, if

9

anything did [Arlon] say about what he wanted in the agreement?" Thus, her excluded testimony would only have described what Arlon supposedly told Jason about what he wanted included in the agreement. Such testimony concerns out-of-court statements and were offered to prove the truth of those statements. Therefore, the statements are hearsay. *See id.*; *Jackson v. Johnson*, No. 12-22-00297-CV, 2024 WL 1101159, at *8 (Tex. App.—Tyler March 13, 2024, no pet.) (mem. op.).

At trial, the companies' trial counsel only argued that the Stewarts' counsel had an opportunity to cross-examine both Arlon and Mary, and that this rendered the testimony non-hearsay. However, an out-of-court statement does not become non-hearsay simply because the declarant is available to testify. *See Jackson*, 2024 WL 1101159, at *8. Because the companies did not articulate any basis for admitting this testimony over the Stewarts' hearsay objection, the trial court did not abuse its discretion when it excluded it. *See id.* at *7–8 ("The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence." (citing *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004))).

Accordingly, we overrule the companies' fourth issue.

D. *Termination*

In their second issue, the companies contend that the trial court erred in its conclusion that Arlon's 2014 e-mail to Jason did not terminate the lease. However, the companies failed to challenge any of the trial court's factual findings on this issue.

The trial court found that, by their subsequent conduct, the parties did not consider the 2014 e-mail as a termination of the lease and that they intended to continue operating under the agreement. The trial court further found that Arlon's February 2016 letter to the FSA indicated that Mary and Arlon did not consider that Arlon's 2014 e-mail had terminated the lease agreement. Moreover, Arlon testified

10

that he did not terminate the agreement in writing prior to August 1, 2015. Because these factual findings are unchallenged, they are binding on us and the parties. *In re Estate of Richards*, 703 S.W.3d 920, 931 (Tex. App.—Eastland 2024, no pet). These findings support the trial court's conclusion of law on this issue, and that conclusion precludes the companies' argument that Arlon's 2014 e-mail terminated the lease for the 2016 crop year. *See Tenaska*, 437 S.W.3d at 524; *Searcy*, 390 S.W.3d at 539.

Accordingly, we overrule the companies' second issue.

E. *Unjust Enrichment*

In their fifth issue, the companies contend that the trial court erred when it found that the Stewarts were not unjustly enriched by the enforcement of the agreement. But unjust enrichment is a quasi-contractual, equitable doctrine that generally only applies when no valid, express contract governs the subject matter of the parties' dispute. *See McLeod v. McLeod*, 644 S.W.3d 792, 809 (Tex. App.—Eastland 2022, no pet.). Because the parties' rights and obligations—the subject matter of the parties' dispute—are governed by the written lease agreement, which we have concluded remained in effect, the unjust enrichment doctrine does not apply. *Id.*; *see Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

Moreover, because the lease remained in effect, Eckert had no right to enter the farm, conduct preparatory work, or plant the 2016 crop, and was therefore a trespasser, as the trial court correctly concluded. "The general rule is that a trespasser who plants crops on the land acquires no title or interest in such crops as against one lawfully entitled to possession." *Garza v. Mitchell*, 607 S.W.2d 593, 601 (Tex. App.—Tyler 1980, no writ) (citing *Whitfield v. Gay*, 253 S.W.2d 54, 56 (Tex. App.—Eastland 1952, no writ)).

Accordingly, we overrule the companies' fifth issue.

F. *Attorney's Fees*

In their sixth issue, the companies contend that the trial court erred when it awarded the Stewarts attorney's fees because they failed to segregate recoverable and unrecoverable fees. We review de novo whether fees were required to be segregated. *Seager v. Fry*, 707 S.W.3d 452, 471 (Tex. App.—Eastland 2025, no pet.) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 312–14 (Tex. 2006)). The duty to segregate fees does not apply when discrete legal services advance both a recoverable and an unrecoverable claim such that the fees are so intertwined that they need not be segregated. *See Chapa*, 212 S.W.3d at 313–14.

The companies' conversion claim was asserted as a counterclaim and as an affirmative defense to the Stewarts' breach-of-contract claim. *See id.* at 312–14. For its affirmative defense, their live pleading characterized the conversion both as a breach of contract and as unclean hands. The equitable doctrine of unclean hands is inapplicable to a claim for breach of contract. *See Madhavan A. Pisharodi, M.D., P.A. v. United Biologics, L.L.C.*, No. 04-18-00324-CV, 2020 WL 1443561, at *6 (Tex. App.—San Antonio Mar. 25, 2020, pet. denied) (mem. op.) (citing *Sammons Enters., Inc. v. Manley*, 540 S.W.2d 751, 757 (Tex. App.—Texarkana 1976, writ ref'd n.r.e.)). And we construe the companies' conversion-as-breach defense to be an allegation of a prior material breach, which discharges the other party from further performance under the contract. *See Chapa*, 212 S.W.3d at 314; *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004). The work performed by the Stewarts' legal counsel in addressing these defenses necessarily overlapped with the prosecution of their breach-of-contract claim. *See Chapa*, 212 S.W.3d at 313–14. Likewise, the defense they asserted against the companies' conversion counterclaim relied on the same analysis that was used to counter the companies challenge to their affirmative defenses—that no conversion occurred.

We conclude that the trial court did not err when it awarded unsegregated attorney's fees to the Stewarts. *See id.* Accordingly, we overrule the companies' sixth issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


April 2, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.