## WILKINSON *v*. POWE.

1. Appeal and Error—Question for Trier of the Facts—Verdict.
   On review of question of fact where jury found for plaintiff, it must be assumed that jury resolved disputed question against the defendants.

2. Torts—Persuading One to Break Contract with Another.
   Defendant's act of persuading a person to break his contract with plaintiff for the indirect purpose of injuring the plaintiff, or benefiting the defendant at the expense of the plaintiff, is a malicious act which is wrongful in law and in fact and therefore actionable if injury issues from it.

---

Inducement of breach of contract by refusal to deal, see 4 Restatement, Torts, § 766 and comment g.

3. SAME—BREACH OF CONTRACT—INTENT—PRIMA FACIE CASE—JUSTIFICATION.

In action by one party to a contract against a person who is not a party to the contract for wrongfully procuring a breach of the contract by the other party thereto, a prima facie case is established when plaintiff proves the intentional procurement of a breach of contract, and, upon such proof, it becomes incumbent upon defendant to show justification.

4. SAME—INDUCING BREACH OF CONTRACT—MALICE—INFERENCES.

In the act of a third person in persuading one of two contracting parties to breach the contract, it is not essential that actual malice or ill will be shown, since the intentional doing of a wrongful act without legal or social justification will raise an inference of malice.

5. SAME—INDUCING BREACH OF CONTRACT—JUSTIFICATION—QUESTION FOR JURY.

In action by one party to a contract against a third person who wrongfully induces the other party to the contract to make a breach thereof, what will constitute justification is usually a question for the jury.

6. SAME—INDUCING BREACH OF CONTRACT—MILK TRUCK OPERATOR—LIABILITY OF CREAMERY.

Defendant creamery's refusal to accept further deliveries of milk by plaintiff milk truck operator who had contracts with farmers to haul their milk to creameries was wrongful when done in order to accomplish the unlawful purpose of bringing about a breach of such contracts of haulage where evidence includes letters written by creamery to farmers soliciting their continued business and which notified them milk would be collected by creamery's own trucks, and creamery's liability for such wrongful act could not be avoided by reason of the fact that plaintiff was unable to procure a market for the milk elsewhere nor because defendant might have caused the same injury by a lawful act.

7. SAME—RIGHT TO PERFORM CONTRACT A PROPERTY RIGHT.

The right to perform a contract and reap the profits resulting therefrom, and the right to compel performance by the other party, is generally regarded as a property right.

8. SAME—HAULING MILK—CONTRACTS—ROUTES—CREAMERY.

Creamery's act in refusing to accept further delivery of milk from farmers if delivered by plaintiff who had contracts with the farmers for the delivery of their milk and in soliciting continued patronage of the farmers by having the milk

hauled in defendants' own truck, which was wrongful and resulted in the destruction of plaintiff's routes, entitled plaintiff to recover from the creamery the value of such routes.

9. SAME—MILK TRUCK ROUTES—CONTRACTS—CONTINUITY OF SERVICE.

In action against creamery to recover the value of plaintiff milk truck operator's routes, the fact that some farmers from whom he had collected milk had not signed contracts with him for doing so would not preclude recovery of damages where plaintiff had an understanding with them and there is no testimony to show that they would not have continued to employ plaintiff to haul their milk if defendants had not interfered by refusing to accept delivery of milk hauled in plaintiff's trucks.

10. DAMAGES—MILK TRUCK ROUTES—EVIDENCE.

In action by milk truck operator against creamery for loss of his routes because defendant had wrongfully procured breach of plaintiff's haulage contracts with farmers from whom defendant purchased the milk, verdict of $4,000 was supported by testimony of value of such routes.

Appeal from Oakland; Hartrick (George B.), J. Submitted October 16, 1941. (Docket No. 96, Calendar No. 41,528.) Decided January 5, 1942. Rehearing denied February 11, 1942.

Case by Jay D. Wilkinson against Tefance M. Powe and another, individually and doing business as Shamrock Creamery, for wrongfully procuring breach of contracts between plaintiff and others. Verdict for plaintiff. Judgment for defendant *non obstante veredicto.* Reversed for entry of judgment on verdict.

*Walter M. Nelson,* for plaintiff.

*William H. Wilmot* (*Robert D. Heitsch,* of counsel), for defendants.

BUSHNELL, J. Plaintiff Jay D. Wilkinson brought this action against defendants Powe and Stinson,

individually and doing business as Shamrock Creamery, charging them with wrongfully procuring a breach of plaintiff's contract with certain farmers to haul their milk.

In 1932 plaintiff and his father, David Wilkinson, began to haul milk for farmers to the Oakland Creamery and built up their first milk route. Later, they ceased to deliver milk to the Oakland Creamery and began to deliver to the Shamrock Creamery. The Wilkinsons developed a second milk route in 1934 or 1935. A written agreement covering the year 1937 was entered into between the Wilkinsons and the farmers on their milk routes in December of 1936. The Wilkinsons agreed to haul milk to Pontiac creameries and the farmers agreed to pay them 25 cents per hundred. Prior to 1937, the arrangement between the Wilkinsons and the farmers was not evidenced by a written contract. The principal and heavier route was 97 miles and the other 94 miles. In April of 1937, David H. Wilkinson assigned all of his interest in the milk routes to plaintiff Jay D. Wilkinson.

Shortly after the execution of the written agreement, defendant Powe told the Wilkinsons that he wanted to take over the larger route and offered in exchange for the route the trade-in value of plaintiff's old truck, and told plaintiff he would give him a job in the creamery. Plaintiff then informed Powe of the existence of the written contract and refused to give up the route. About three months later Powe informed plaintiff that he would be required to replace the open stake racks on his trucks with insulated bodies because of a municipal ordinance. After plaintiff made this change in his trucks, he was unable to get his trucks into the creamery and the milk had to be handled by hand. This led to friction between the parties.

On May 29, 1937, defendant Powe sent a letter to the farmers doing business with plaintiff, worded as follows:

"For reasons which are vital to our business, we the Shamrock Creamery, have decided that on and after June 1st, we will purchase no milk except that which is picked up by our own trucks at the farm.

"Nothing on your part has occasioned or made necessary this change, and we are hopeful that you will continue to sell us your milk. Pursuant to the change made, our trucks will call at your place Tuesday afternoon, June 1st, to pick up your milk, if you desire to continue business with us.

"Trusting that our business relationship may continue and be of mutual benefit, I am,

Yours very truly

(Signed)    T. M. POWE,

SHAMROCK CREAMERY."

The particular season of the year in which the letter was written was described by a witness as being the "lush" season for milk when the available supply is about double that of other months of the year. This letter resulted in a meeting of some of the farmers to consider the situation. As a result of the request made by some of these farmers at the meeting, defendants sent out a notice dated June 1, 1937, reading:

"We have agreed to let Jay D. Wilkinson's trucks continue to haul the milk they have been hauling to our milk plant for the first 10 days of June, 1937. Disregard the notices you received today May 31st until June 11th."

On June 10th, Powe wrote a letter to Wilkinson in which he said:

"We have caused to be served on all farmers affected by the same a duplicate of the attached letter.

Due to a verbal agreement made in consideration of the wish of some of those affected the date stated was extended to June 11, 1937.

"Since we understand that you have a contract of some nature with many of the farmers in question we are inclosing a copy of said letter, so that you may govern yourself accordingly."

Wilkinson was unable to find another suitable market for milk after June 10th and was soon forced to abandon his routes. Defendants have since hauled the milk of practically all the farmers formerly under contract with plaintiff.

Plaintiff alleged in his declaration that defendants' object was to prevent him from protecting the farmers on his routes from false, fraudulent, and dishonest practices in the testing, weighing and price paid for milk. This was denied by defendants. They claimed their reason for deciding to haul the milk was that plaintiff failed to deliver the milk on time or in a proper condition, and that the action was taken to protect themselves and their customers by insuring a steady supply of good cream and wholesome milk. The testimony is in conflict on this point; but since the jury found for plaintiff, it must be assumed that they resolved this question against the defendants.

Plaintiff claimed damages in the sum of $5,000, and testified that each of his routes had a value of $2,000. The jury returned a verdict in the sum of $4,000. On a former trial by jury, a verdict of $5,000 was rendered and judgment entered thereon. Subsequently a new trial was granted. On this, the second trial, decision on a motion for directed verdict having been reserved, the trial judge entered a judgment for no cause of action.

In a written opinion the court observed that *Morgan* v. *Andrews,* 107 Mich. 33, is authority for

the proposition that an action for damages lies against one who is not a party to a contract but who wrongfully induces a breach or termination thereof, and stated that the acts of defendants, "in order to cause liability, must have been over and above and other than mere refusal to accept milk hauled by the plaintiffs." The court also observed that in *Morgan* v. *Andrews,* "the only Michigan case on the subject, the act there rendered (which created) liability was the malicious falsehood and deceit of the defendant in inducing the purchaser to reject the machine which he would otherwise have accepted."

The court stated that "the case at bar does not permit of any speculation on the element of falsehood or deceit which would amount to fraud, leaving then only for consideration, whether or not the action of the defendant could be construed factually as the application wrongfully of pressure and force," citing *Angle* v. *Railway Co.,* 151 U. S. 1 (14 Sup. Ct. 240, 38 L. Ed. 55), and *Bitterman* v. *Railroad Co.,* 207 U. S. 205 (28 Sup. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693).

The crux of the court's opinion is expressed as follows:

"A factual situation justifying the submission of the issue to a jury for the assessment of the damages is not present. The jury verdict must be predicated upon a circumstance which does not take into consideration the defendants' right to discontinue its source of supply at any time. To find for the plaintiff is a sympathetic attempt to give legal security to one, who, in a precarious position, acted unwisely. * * * Without their acceptance (defendants) of the product the routes had no value. Lawful action, not unlawful action, then eliminated any value the routes may have had."

If the trial court is to be sustained, the judgment must stand on one of two grounds; first, that, in procuring the breach of contract, defendants were exercising what is often designated as a "superior" or "absolute" right, *i.e.*, to refuse to accept further delivery of milk from plaintiff and, therefore, no justification was necessary; or second, that the injury, if any, was the result of defendants' refusal to accept deliveries of milk from plaintiff, and the breach of contract by the farmers was not the proximate cause of plaintiff's injury.

*Morgan* v. *Andrews, supra,* though not citing the leading English case of *Lumley* v. *Gye,* 2 El. & Bl. (Q. B. 1852), 216 (118 Eng. Rep. 749, 22 L. J. Q. B. [N. S.] 463), in the following language approves the general proposition laid down in the *Lumley Case* that:

"Merely to persuade a person to break his contract may not be wrongful in law or fact; still, if the persuasion be used for the indirect purpose of injuring the plaintiff, or benefiting the defendant at the expense of the plaintiff, it is a malicious act, which, in law and in fact, is a wrongful act, and therefore an actionable act, if injury issues from it."

A prima facie case is established when plaintiff proves the intentional procurement of a breach of contract, and, upon such proof, it becomes incumbent upon defendant to show justification. See 84 A. L. R. p. 79.

The court said in *E. L. Husting Co.* v. *Coca Cola Co.,* 205 Wis. 356 (237 N. W. 85, 84 A. L. R. 22, 29), in quoting from *Campbell* v. *Gates,* 236 N. Y. 457 (141 N. E. 914):

"The great weight of authority in this country and in England is to the effect that, if A has a legal

contract with B, either for the rendition of service or any other purpose, and C, having knowledge of the existence thereof, intentionally and knowingly, and without reasonable justification or excuse, induces B to break the contract, by reason of which A sustains damage, an action will lie by A against C to recover the same.   *   *   *   The action of C is malicious, in that, with the knowledge of A's rights, he intentionally and knowingly and for unworthy or selfish purposes, destroys them by inducing B to break his contract.  It is a wrongful act, done intentionally, without just cause, or excuse, and from this a malicious motive is to be inferred.  This does not necessarily mean actual malice or ill will, but the intentional doing of a wrongful act without legal or social justification."

No categorical answer can be made to the question of what will constitute justification, and it is usually held that this question is one for the jury.  See cases collected in 84 A. L. R. p. 81.  The language in some of the cases supports defendants' contention that they acted under a "superior" or "absolute" right in refusing to accept further deliveries of milk by plaintiff, and that, under those circumstances, their action requires no justification.  See *Eastern States Retail Lumber Dealers Assn.* v. *United States,* 234 U. S. 600 (34 Sup. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915 A, 788), and *H. D. Watts Co.* v. *American Bond & Mortgage Co.,* 267 Mass. 541 (166 N. E. 713, 84 A. L. R. 12).  See, especially, the instructions of the trial judge in the *Watts Case,* shown on pages 21 and 22 of 84 A. L. R.

If the defendants in the instant case had merely refused to accept further delivery of milk by plaintiff, they would have been clearly within their legal rights, although this would have resulted in a breach of contract between plaintiff and the farmers.  But defendants did more.  Their letters of May 29th

and June 1st show active solicitation of a breach of the contract and their refusal to accept delivery of milk was merely another step in bringing about the breach.

Almost analogous facts, so far as the principle is concerned, are found in *Knickerbocker Ice Co.* v. *Gardiner Dairy Co.,* 107 Md. 556 (69 Atl. 405, 16 L. R. A. [N. S.] 746). In the *Gardiner Case,* plaintiff Gardiner Company was engaged in the dairy business and required a large quantity of ice during the spring and summer months. In order to meet its requirements, it entered into a contract with the Sumwalt Company to deliver not exceeding 20 tons of ice a day until the completion of plaintiff's plant, then in the course of construction, at a price of $5 per ton, delivered. Sumwalt at the time was purchasing ice in large quantities from the defendant, Knickerbocker Ice Company, and when defendant learned of the contract between Gardiner and Sumwalt, it notified Sumwalt that it would refuse to deliver any ice whatever to it unless it refrained from delivering ice to Gardiner. Being compelled by the exigencies of its business to secure ice from Knickerbocker, and alarmed by the threat, Sumwalt breached its contract with Gardiner and advised it that this was done because of the action of Knickerbocker. Gardiner was thereby compelled to purchase ice directly from Knickerbocker at a price considerably greater and on less advantageous terms. The court discussed *Lumley* v. *Gye, supra,* and other authorities, and held that (p. 567):

"If the Knickerbocker company had simply refused to furnish the Sumwalt company with ice, the Gardiner company would not, for that reason alone, have a remedy against the Knickerbocker company. Such action would not necessarily be unlawful or wrongful, but, if the Knickerbocker company refused to furnish the Sumwalt company if it fur-

nished the Gardiner company, although it knew it was under contract to do so, in order to get the business of the Gardiner company for itself on its own terms, then it was unlawful thus to interfere with the contract between the Sumwalt company and the Gardiner company. So, without further pursuing that branch of the case, we are of the opinion that the demurrer was properly overruled, as the declaration stated an actionable wrong, even if there had been no express allegation of malice.''

The editor states in the annotations of 16 L. R. A. (N. S.) at page 747, that:

''Although the doctrine is denied by some courts, the weight of authority at the present time sustains *Knickerbocker Ice Co.* v. *Gardiner Dairy Co.*''

Substituting defendant for Knickerbocker, the farmers for Sumwalt, and plaintiff for Gardiner, there is a parallel in principle. Instead of refusing to sell, as in the Gardiner case, defendants in the instant case refused to purchase from the farmers unless they broke their contract with plaintiff and thereby brought about the breach.

Defendants' refusal to accept further deliveries of milk by plaintiff was wrongful in the light of the evidence in the instant case because it was done to accomplish an unlawful purpose, *i.e.*, to bring about a breach of contract. It therefore follows that the problem of proximate cause disappears from consideration in the case. Defendants cannot be heard to say that they should not be held liable for the injury caused plaintiff by their unlawful acts merely because they could have caused the same injury by a lawful act.

The right to perform a contract and to reap the profits resulting therefrom, and the right to compel performance by the other party, is generally regarded as a property right. The direct consequence

of defendants' acts was to destroy plaintiff's routes, and plaintiff is entitled to recover their value.

That a few of the farmers on the routes had not signed the contracts is beside the point. Plaintiff certainly had an understanding with them, and there is no testimony to show that they would not have continued to employ plaintiff to haul their milk if defendants had not interfered.

The damages allowed by the jury are supported by the testimony. The order for entry of judgment notwithstanding the verdict is vacated and the cause remanded for entry of judgment upon the verdict. Costs to appellant.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUTZEL, and SHARPE, JJ., concurred.