**SAKOWITZ, INC., Petitioner,**

v.

**Diane STECK, Respondent.**

No. C–2495.

Supreme Court of Texas.

April 4, 1984.

Rehearing Denied May 30, 1984.

Hirsch & Westheimer, Joe C. Holzer, Houston, for petitioner.

Archer, Peterson & Waldner, Thomas B. Swanson, Houston, for respondent.

POPE, Chief Justice.

Plaintiff Diane Steck brought suit against Sakowitz, Inc. for tortious interference with the employment contract that Steck had with Oshman's Sporting Goods, Inc. Steck sued because she was dismissed after the attorney for Sakowitz wrote Oshman's complaining that Oshman's employment of Steck was a breach of Steck's prior non-competition agreement with Sakowitz. The trial court granted Defendant Sakowitz's motion for summary judgment. The court of appeals reversed the judgment for Sakowitz and remanded the cause, holding that there were fact issues whether Sakowitz acted in good faith in sending the letter to Oshman's, whether Steck had signed the non-competition agreement and whether Sakowitz reasonably believed it had a legal interest to protect. 659 S.W.2d 91. At the trial court level, Steck also asserted a libel action against Sakowitz, but the court of appeals rejected that claim. Steck has abandoned that claim in this court and relies only on her claim that Sakowitz's letter to Oshman's was a tortious interference with her employment contract. We reverse the judgment of the court of appeals and affirm the judgment of the trial court that plaintiff Steck take nothing.

Sakowitz showed at the summary judgment hearing that Diane Steck went to work for Sakowitz in the fall of 1976 as a clerk. In February of 1977 Sakowitz selected her to participate in the company's executive training program. The summary judgment proof, including Steck's deposition, show that on February 23, 1978, at the beginning of Steck's second year of training, Sakowitz distributed a non-competition agreement to the participants. Sakowitz explained to the executive trainees that, because it was making an investment in those participating, it did not want to train them for its competitors. Sakowitz required all of the trainees to sign the agreement and explained that those who did not sign it would be dropped from the program. Steck's continued employment in her position as an assistant buyer was not, however, conditioned upon her participation in the training program.

Steck signed her name on the first page of the contract in the space provided for name identification. She did not sign the document on the signature line at the end of the four-page document. She returned the document without signing it at the end of the document because she didn't think Sakowitz's reasons for the contract were valid, and she hoped that her failure to sign "would slip by," and "nobody would notice it."

Steck continued in and completed the training program fifteen months later in May 1979. She continued her work with Sakowitz as an assistant buyer for gifts and stationery. Four months after completing the program, she left Sakowitz and began working for Oshman's as a buyer of gifts and stationery, the skill for which Sakowitz had trained her.

Sakowitz's attorney wrote two letters: one to Steck and another to Oshman's. The letter to Steck informed Steck that her new employment with Oshman's violated her non-competition agreement. Sakowitz's letter to Oshman's advised that Sakowitz had a contract with Steck that prohibited her for one year from working for an entity engaged in the operation of a

specialty or department store in Harris County. The letter asked that Oshman's honor the terms of Sakowitz's contract and advised that failure to do so would leave no alternative "but to consider legal action against your company." Oshman's terminated Steck's employment after receipt of the letter. It is the letter to Oshman's that is the basis of Steck's claim that Sakowitz is liable for tortious interference with her employment contract with Oshman's.

Sakowitz's attorney, who prepared and sent the letter to Oshman's, showed by affidavit at the summary judgment hearing that he sent the letter to protect the rights of his client only after careful study and with no ill will or malice but in the good faith belief that under the applicable law, Steck had agreed not to compete. In *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979), we held that pleadings do not constitute summary judgment proof. We also held that a non-movant, like Steck, must come forward by written motion and sworn proof to controvert the summary judgment proof. Plaintiff Steck's response to the motion for summary judgment included no sworn statement that Sakowitz acted without legal justification or excuse. She attached an unsworn brief about the law from which we infer that she contended that Sakowitz asserted an unfounded claim.

■ To establish the necessary elements for her claim of tortious interference, Steck had to show (1) that the defendant maliciously interfered with the contractual relationship and (2), without legal justification or excuse. *Terry v. Zachry*, 272 S.W.2d 157, 159 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.). In *Morris v. Jordan Financial Corp.*, 564 S.W.2d 180, 184 (Tex. Civ.App.—Tyler 1978, writ ref'd n.r.e.), malice was defined as an act without excuse or just cause. One is privileged to interfere with a contract of another if it is done in the bona fide exercise of his own rights or if he has an equal or superior right in the subject matter to that of the plaintiff. *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80, 91 (Tex.1976). This privilege extends to the actual assertion or threatened assertion of rights. *Morris v. Jordan Financial Corp.*, 564 S.W.2d 180, 184 (Tex.Civ.App.— Tyler 1978, writ ref'd n.r.e.).

■ Many lawsuits and claims are asserted even though their validity is not absolute. The uncertainty of a dispute is often the reason that one resorts to the courthouse for a resolution. In analogous situations, the failure to prevail after the institution and prosecution of a suit is not regarded as malicious. *Salado College v. Davis*, 47 Tex. 131, 135–36 (1877); *Butler v. Morgan*, 590 S.W.2d 543, 545 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The basis for the rule is that good faith litigants should be assured access to the judicial system. One may not recover in an action for malicious prosecution because the opposing party was mistaken about the strength of a claim. *Smith v. Adams*, 27 Tex. 28, 29–30 (1863); *Martin v. Trevino*, 578 S.W.2d 763, 768 (Tex.Civ.App. —Corpus Christi 1978, writ ref'd n.r.e.).

The similar rule applicable to suits for tortious interference with contracts as stated in *Tidal Western Oil Corp. v. Shackelford*, 297 S.W. 279 (Tex.Civ.App.—Fort Worth 1927, writ ref'd), is:

> It would be a strange doctrine indeed to hold that a person having a well grounded and justifiable belief of a right in or to property may be held liable in damages because of an assertion of such a right.

*Id.* at 281.

■ Sakowitz was privileged to assert its claim to the noncompetition agreement, grounded upon estoppel theory or an oral contract, even though that claim may be doubtful, so long as it asserted a colorable legal right. *Hardin v. Majors*, 246 S.W. 100, 102 (Tex.Civ.App.—Amarillo 1923, no writ). *See also Garza v. Mitchell*, 607 S.W.2d 593, 600 Tex.Civ.App.—Tyler 1980, no writ); *Terry v. Zachry*, 272 S.W.2d 157, 159 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.).

We hold that Sakowitz made a showing of its legal justification, but Steck produced

no summary judgment evidence to raise a fact question regarding the lack of justification for Sakowitz's letter to Oshman's. Therefore, Steck failed to raise an issue about one of the two necessary elements to prevail on a tortious interference cause of action.

We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

WALLACE, J., dissents with opinion in which CAMPBELL and RAY, JJ., join.

KILGARLIN, J., not sitting.

WALLACE, Justice, dissenting.

I respectfully dissent. This is a summary judgment case. The court's opinion can only be supported if the movant (Sakowitz) has successfully established that there exists no genuine issue of material fact on an essential element of the non-movant's (Steck's) cause of action for tortious interference with contract. *Bradley v. Quality Service Tank Lines, Inc.*, 659 S.W.2d 33 (Tex.1983); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970).

#### I.

The essential elements of a claim for tortious interference are: (1) that a contract existed that was subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of the plaintiff's damages, and (4) actual damage or loss occurred. *Bellefonte Underwriters Insurance Co. v. Brown*, 663 S.W.2d 562, 573 (Tex.App.—Houston [14th Dist.] 1983, writ requested); *Armendariz v. Mora*, 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).

As recognized by the court, the summary judgment evidence establishes a prima facie case of tortious interference with contract. Diane Steck had an existing contractual employment relationship with Oshmans. By Sakowitz's own evidence and admissions they willfully and intentionally sent a letter to Oshmans seeking Steck's termination. This letter reads in part as follows:

> We [Sakowitz's attorneys] hereby formally request that you honor the terms of our client's [Sakowitz] contract in this matter [the alleged non-competition agreement] by terminating her [Steck's] services. We must further advise that in the event you fail to do so ... we will have no alternative but to consider legal action against your company.

After receiving this letter, Oshmans terminated Steck's employment resulting in the damages alleged. There can be no doubt that genuine issues of fact exist on the essential elements of Steck's tortious interference claim.

However, Sakowitz argues, and the court holds, that it is privileged to interfere with Steck's employment with Oshmans. This privilege is based upon the alleged non-competition agreement which existed between Steck and Sakowitz. The court finds that Steck failed to "... controvert the summary judgment proof" on the claimed privilege. In doing so, they have misapplied well established summary judgment law.

#### II.

The Texas courts have followed the law, consistent with many of our sister states,[1] that a claim of justification or privilege in the interference of contractual relations is

---

1. *Alyeska Pipeline Serv. Co. v. Aurora Air Serv., Inc.*, 604 P.2d 1090, 1095 (AK 1979); *Chanay v. Chittenden*, 115 Ariz. 32, 563 P.2d 287, 292 (1977); *Herron v. State Farm Mut. Ins. Co.*, 56 Cal.2d 202, 14 Cal.Rptr. 294, 363 P.2d 310, 312 (1961); *Owen v. Williams*, 322 Mass. 356, 77 N.E.2d 318, 321 (1948); *Wilkinson v. Powe*, 300 Mich. 275, 1 N.W.2d 539, 542 (1942); *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 134 N.W.2d 892, 901 (1965); *Smith Dev. Co. v. Bilow Enter. Inc.*, 112 R.I. 203, 308 A.2d 477, 482 (1973); *Mitchell v. Aldrich*, 122 Vt. 19, 163 A.2d 833, 836 (1960); *Scymanski v. Dufault*, 80 Wash.2d 77, 491 P.2d 1050, 1056 (1971); *see also Forro Precision, Inc. v. I.B.M.*, 673 F.2d 1045, 1053 (9th Cir.1982); *Smith v. American Guild of Variety Artists*, 349 F.2d 975, 981 (8th Cir.1965); *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 134 N.E.2d 97, 151 N.Y.S.2d 1 (N.Y.1936).

an affirmative defense upon which the defendant has the burden of proof. *Tippett v. Hart,* 497 S.W.2d 606, 613 (Tex.Civ.App. —Amarillo) *writ ref'd n.r.e. per curiam,* 501 S.W.2d 874 (Tex.1973); *Bellefonte Underwriters,* 663 S.W.2d at 573–74; *Armendariz,* 553 S.W.2d 400, 405; *see also* W. PROSSER, The Law of Torts § 129 at 942–43 (4th Ed.1971). The reason for such a rule is obvious; the party asserting the alleged privilege *does not deny the interference* but rather seeks to avoid liability based upon a claimed interest which is being impaired or destroyed by the plaintiff's contract. Such defenses, which constitute a confession and avoidance, are affirmative in nature. TEX.R.CIV.P. 94. The fact that privilege is an affirmative defense significantly alters the applicable summary judgment law and the requirements for appellate review.

Under Rule 166–A, Texas Rules of Civil Procedure, when a defendant moves for summary judgment on the basis of an affirmative defense, he must conclusively prove all essential elements of that defense. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); *see also City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). "The movant ... must establish his entitlement to a summary judgment ... by conclusively proving all essential elements of his cause of action or defense as a matter of law." *Id.*

In this case Sakowitz, the summary judgment movant, had the burden to establish, as a matter of law, that its interference with the Steck/Oshmans employment contract was privileged. It must be noted that the claimed privilege is not absolute, *but qualified,* and can only be sustained if the interferor can show either: (1) that he has an equal or superior right to that of the plaintiff or, (2) he has a good faith belief that such a superior right exist. *C.f., Black Lake Pipe Line Co. v. Union Construction Co.,* 538 S.W.2d 80, 91 (Tex. 1976).

In reviewing the summary judgment proof, evidence favorable to the non-movant (Steck) will be taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in her favor. *Wilcox v. St. Mary's University,* 531 S.W.2d 589, 593 (Tex.1975). Furthermore, the burden of proof that exists upon a trial on the merits is immaterial to the burden that a movant for summary judgment must bear. *Missouri-K.-T. Ry. Co. v. City of Dallas,* 623 S.W.2d 296, 298 (Tex.1981); *Glenn v. Prestegord,* 456 S.W.2d 901 (Tex.1970). Instead, summary judgments must stand on their merits and cannot be granted on the failure of the non-movant's proof if the movant has not conclusively established his affirmative defense. *Clear Creek,* 589 S.W.2d at 678.

### III.

As recognized by the court's opinion, the non-competition agreement and Steck's deposition are the only summary judgment evidence concerning whether or not Sakowitz and Steck had entered into a binding contract. The agreement contains Steck's name on the front page; however, neither Steck's nor Sakowitz's signatures appear at the end of the contract in the spaces provided for the parties' signatures. Steck's deposition testimony, as stated in the court's opinion, shows that Steck did not intend or consent to be bound by the nature of the terms set out in the contract. To hold that the evidence proves the contract as a matter of law is to ignore the facts and the law. Sakowitz did not establish as a matter of law an equal or superior right allowing it to interfere with the Steck/Oshmans contract.

The summary judgment evidence of legal justification and good faith is equally defective. The evidence relevant to this contention contains, among the other proof, the affidavit of Sakowitz's attorney who wrote the letter to Oshmans seeking Steck's dismissal and threatening legal action. The affidavit alleged that the letter was sent in good faith based upon the attorney's belief that Sakowitz had a legal right to interfere with the Steck/Oshmans employment contract. However, also attached to both Sakowitz's motion and

Steck's response was the *unsigned non-competition agreement* and Steck's deposition testimony stating that she did not sign the contract.

An affidavit of an interested witness can be sufficient to preclude a question of fact. However, it must be "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and [capable of being] readily controverted by the opposing party." TEX.R.CIV.P. 166-A(c); *Clear Creek*, 589 S.W.2d at 676. The majority impliedly finds that the affidavit meets these requirements and then makes a critical error and holds that Steck should have then come forward by "... sworn proof to controvert the summary judgment proof ...." This is not the law. Rather, as stated in *Swilley v. Hughes, supra,* the defendant must conclusively establish his affirmative defense. The non-movant has no burden to controvert the movant's proof unless such proof has first established the movant's defense as a matter of law. *Clear Creek*, 589 S.W.2d at 678. Here, the evidence is not conclusive but raises an issue of fact on Sakowitz's good faith and legal justification. Disputed fact issues are left for a jury in a trial on the merits.

Viewing the summary judgment evidence in its most favorable light to support Steck's claim and indulging in reasonable inferences to support her charge, Sakowitz did not establish its defense as a matter of law. While the affidavit may be some evidence of good faith and legal justification it is not conclusive. The unsigned non-competition agreement and Steck's testimony is also some evidence that Sakowitz's actions in sending the letter to Oshmans were not in good faith and legally justified. Furthermore, the affidavit of Sakowitz's attorney spoke of his subjective intent, such statements are not subject to being readily controverted as required by the summary judgment rule. *See Lewisville State Bank v. Blanton*, 525 S.W.2d 696 (Tex.1975).

## IV.

For the reasons stated above, I would affirm the decision of the court of appeals which remanded the cause of tortious interference to the trial court. However, in considering whether Sakowitz's conduct was protected as a matter of law, the court should also balance the relative interests of the parties' which were affected by the interference. RESTATEMENT (SECOND) OF TORTS § 767 (1979); PROSSER § 129. The interest of Steck which was affected by the interference is of the utmost importance. She was denied the right to earn a livelihood in her chosen profession for a period of one year. Furthermore, the alleged damages suffered by Sakowitz were, under the current state of the record, uncertain.

In this connection, it should be recognized that the alleged agreement upon which Sakowitz bases its justification contains a non-competition covenant. While it is true that this court has upheld such contracts, we have recognized that they effectuate a restraint on trade and must be reviewed with adequate care to determine their reasonableness. *E.g., Frankiewicz v. National Comp Associates*, 633 S.W.2d 505 (Tex.1982). The enforceability of the current provision is not now before us. However, to allow Sakowitz to interfere with the Steck/Oshmans contract effectively allows them to enforce an agreement that has not been established as reasonable or shown to have been executed.

The same problem presented to this court was addressed by the Supreme Court of Minnesota. *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 134 N.W.2d 892 (1965). In *Bennett* a radio announcer (Bennett) had a *signed contract* with the defendant broadcasting company which restricted his ability to work at other radio stations in the Minneapolis area for eighteen (18) months after he left the defendant's employ. Bennett resigned his position at the defendant's station and began contract negotiations with another station within the restricted area. This fact was made known to the defendant who sent, through its attorneys, the following letter to Bennett's new employer:

We [attorneys for defendant] are authorized to advise you that if there is any

violation of the contract referred to [the non-competition contract] on the part of Mr. Bennett that we will be instructed to institute legal proceedings.

134 N.W.2d at 894, 895. The potential employer withdrew from contract negotiations and Bennett then sued defendant for contractual interference. The defendant moved for summary judgment under the applicable Minnesota statute which is similar to our Rule 166–A. *See* 134 N.W.2d at 897. In its motion for summary judgment, the defendant alleged "legal justification" as grounds to defeat Bennett's claim. Attached to the motion was the affidavit of defendant's attorney asserting alleged justification. The trial court granted the defendant's motion.

The Minnesota Supreme Court recognized that a privilege may exist under certain facts and that such privilege is provided for under § 773 of the RESTATEMENT (SECOND) OF TORTS. However, they held that such assertions of privilege are ones upon which the defendant has the burden of proof and ordinarily present a fact question for the jury. Therefore, after reviewing the record and weighing the relative interests affected by the defendant's interference, the court remanded the cause for trial on the merits. In reaching this conclusion the court said:

> A man's right to labor in any occupation in which he is fit to engage is a valuable right, which should not be taken from him, or limited, by injunction, except in a clear case showing the justice and necessity therefor.
>
> \*     \*     \*     \*     \*     \*
>
> Here the record does not establish as a matter of law that the restrictive covenant is enforceable, nor does it establish that the economic interest of the [defendant] would in any way be affected by the employment of plaintiff ....
>
> \*     \*     \*     \*     \*     \*
>
> The courts have not attempted to formulate a rule by which justification or lack of justification may be determined, but have said that in general the issue is largely one of fact for the jury ....
>
> \*     \*     \*     \*     \*     \*

Moreover, ... the burden of proving justification is upon the defendant.

134 N.W.2d at 899–901.

I would follow a similar rule. The summary judgment evidence in this case does not establish Sakowitz's good faith and justification as a matter of law.

## V.

In conclusion, I agree with the court's holding that Texas recognizes the qualified privilege of a person to interfere with the contractual relations of another. However, this assertion of "privilege" is an affirmative defense and a proper application of summary judgment law leads to the conclusion that fact issues remain for a jury to determine whether or not Sakowitz was acting in good faith and with legal justification when they sent the letter to Oshmans. Therefore, I would affirm the judgment of the court of appeals which affirms the summary judgment for Sakowitz on Steck's libel claim, *see James v. Brown*, 637 S.W.2d 914 (Tex.1982), but remands her cause of action for interference with contract.

CAMPBELL and RAY, JJ., join in this Dissenting Opinion.