Braddy v. Houston Venture 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-178-CV

     RICK G. BRADDY, ET AL.,
                                                                                              Appellants
     v.

     HOUSTON VENTURE PARTNERS, LTD., ET AL.,
                                                                                              Appellees
 

From the 151st District Court
Harris County, Texas
Trial Court # 91-09407
                                                                                                    

O P I N I O N
                                                                                                    

      Appellants Rick Braddy and Jacob Sobotka, plaintiffs below, seek to overturn a take-nothing
summary judgment awarded the defendants, Dialogic Systems Corporation (Dialogic), DSC
Ventures (DSC), Houston Venture Partners, Ltd. (HVP), Dan Tompkins (Tompkins), Jay Kear
(Kear), and Harvard Hill (Hill).


 Other defendants were non-suited, and the defendants' cross-claims against Braddy and Sobotka were severed. Braddy, the president and a holder of common
shares in Pioneering Controls Technologies, Inc. (PCT), asserted causes of action for tortious
interference with existing contracts, duress, and breach of fiduciary duty. Sobotka, also a
common shareholder, sued for breach of fiduciary duty. We will affirm in part and reverse and
remand in part.  
BACKGROUND
      In March 1985 Braddy, who developed a computer software program called SCADIX,
organized PCT to market the software and served as its chief executive officer. Sobotka is one
of PCT's initial common shareholders. Appellees, the defendants below, are either holders of
PCT's preferred shares, representatives of shareholders, or officers of the company. Due to
continuing financial difficulties, PCT sought outside financing from various sources to obtain
operating funds.
      By early 1988, PCT needed additional capital as a result of continuing operating deficits. 
Dialogic and DSC then entered into a $500,000 equity-funding arrangement with PCT in October
1988. Despite this new infusion of capital, PCT was again in financial difficulties by February
1989. After being contacted by PCT, HVP and Jacob Hershey each considered providing the
company with $200,000 in financing, but this financial package never materialized. HVP did,
however, later join with DSC and SBI Capital Corporation (SBICC) in a combined financial offer
of $450,000, which was tendered to PCT upon certain conditions. These conditions included the
right of first refusal for future financing, limiting the right of the company to borrow money, and
Braddy's removal as president. PCT's board rejected the $450,000 offer.
      By March 1989 PCT could not meet its payroll and other obligations. Having rejected DSC's,
HVP's, and SBICC's $450,000 financing package, PCT nevertheless borrowed $450,000 from
DSC, HVP, and SBICC on demand notes secured by the company's assets. Braddy contends,



however, that the defendants agreed and represented that the demand notes were to serve only as
"interim" financing until a $450,000 permanent-financing package could be "put in place," at
which time the demand notes were to be "superseded" and of no further effect.
      By June 1989 PCT was again capital-poor, and most of the demand notes were due. DSC and
HVP agreed to provide $2.2 million in permanent equity funding but only upon certain conditions:
(1) the lenders could convert debt to equity ownership at a conversion price of .50 cents per share,
(2) PCT would have to change its management, and (3) Braddy and PCT would have to modify
Braddy's royalty and employment agreements with the company. In July 1989 PCT's board of
directors and Braddy, acting individually, accepted the $2.2 million financial package and
approved the loan conditions. Contemporaneously, Braddy released his contract with PCT that
guaranteed him a 3% royalty on SCADIX sales and amended his employment contract with the
company to reduce its term. After accepting the benefits of the $2.2 million financial package,
Braddy and Sobotka sued the defendants.
CAUSES OF ACTION
Braddy—Tortious Interference With Contracts
      Braddy admits that he agreed to release his royalty agreement and to reduce the term of his
employment contract with PCT. He alleges, however, that he did so only because of express and
implied threats by Dialogic, HVP and SBICC


 to "exercise their rights and remedies" under the
demand notes, which would have forced PCT into bankruptcy. "Such threats could not have been
made," Braddy asserts in his second amended petition, "had [DSC, HVP and SBICC] acted in
accordance with their previous agreements and representations to put in place the $450,000
Financing." Thus, Braddy alleges that the defendants tortiously interfered with his royalty
agreement and employment contract, and seeks to collect the 3% royalty that would have been due
under the released royalty agreement and to recover the difference between what he would have
been paid under the original employment contract and what he is to receive during its reduced
term.
Braddy—Duress
      As already noted, Braddy contends he released the royalty agreement and modified the
employment contract only because DSC, HVP and SBICC threatened to exercise their rights under
the demand notes to liquidate the company. They had no right to make such threats, Braddy
alleges, because they had previously agreed and represented that the demand notes were interim
in nature until such time as the $450,000 permanent-financing package could be "put in place." 
Accordingly, Braddy asserts that he acted under duress and seeks the same damages he alleged in
connection with his suit for tortious interference.
Braddy and Sobotka—Breach of Fiduciary Duty
      Braddy and Sobotka contend that DSC, HVP and SBICC, as owners of PCT's preferred stock,
breached a fiduciary duty owed them (Braddy and Sobotka) as holders of common stock. They
breached that duty, according to the plaintiffs, by "forcing upon PCT an unreasonably low
conversion price of $0.50 per share," thereby diluting Braddy's and Sobotka's ownership of
common stock, and by "exercising control over the management of the affairs of PCT in such
manner as to benefit themselves at the expense of Plaintiffs." Braddy and Sobotka sue to recover
the difference between the value of their stock, unaffected by the breach of fiduciary duty, and the
diminished value of the stock resulting from the breach.  
SUMMARY JUDGMENT GROUNDS
      Defendants asserted these grounds for a summary judgment on Braddy's actions for tortious
interference and duress: (1) there was no tortious interference as a matter of law because Braddy
voluntarily consented to the changes in his contracts with PCT; (2) as investors and stockholders
in PCT, defendants were as a matter of law justified and privileged in forcing changes in Braddy's
contracts with the company; and (3) there was no duress as a matter of law because the demand
notes were due and DSC and HVP, as holders of the notes, could therefore lawfully threaten to
exercise their rights under the notes. Defendants also moved for a summary judgment on Braddy's
and Sobotka's derivative actions for breach of fiduciary duty, which they asserted in their first
amended petition. Braddy and Sobotka argue in point three, however, that the defendants never
moved for a summary judgment against their actions for breach of fiduciary duty, which they
asserted in their own right in the second amended petition. We agree with their contention.
CONTENTIONS
      There can be no tortious interference with an existing contract when the interference is legally
justified. Sakowitz, Inc. v. Steck, 669 S.W.2d 105, 107 (Tex. 1984). For example, a party who
consents to an invasion of his interests cannot recover in a tort action for the act or resulting harm. 
Restatement (Second) of Torts § 892A(1) (1979). Likewise, one is privileged to interfere
with another's contract in the bona fide exercise of his own rights or if his right in the subject
matter is equal or superior to that of the plaintiff. Sakowitz, Inc., 669 S.W.2d at 107. This rule
extends to an actual or threatened assertion of privileged rights. Id. The defendants, as
shareholders in PCT and potential lenders to the company, claim they were privileged as a matter
of law to interfere with Braddy's contracts in the exercise of their own equal or superior rights. 
See id. They moved for a summary judgment on both of these grounds—consent and privilege. 
Moreover, they assert that the evidence conclusively establishes that the demand notes were due
and, therefore, any threat to exercise their rights under the notes was lawful and could not
constitute duress. See Simpson v. MBank Dallas, N.A., 724 S.W.2d 102, 109 (Tex. App.—Dallas
1987, writ ref'd n.r.e.). 
      Braddy first contends the court could not enter a summary judgment on his claim for tortious
interference because of a fact question about whether he acted under duress. See Restatement
(Second) of Torts § 892B(3) (1979) (consent is ineffective if given under duress). As already
noted, he claims that the defendants' threat to exercise their rights under the demand notes was
unlawful because they had previously represented that the notes would be replaced and superseded
by a $450,000 permanent-financing package. He also argues that they were not privileged to
interfere with his contracts because, as holders of PCT's preferred shares, they lacked a "unity
of interest" with the company necessary to support such a privilege. 
      Braddy's second point is that the court was precluded from entering a summary judgment on
his claim for duress because of a fact question on whether his consent was voluntary or given
under duress. Braddy and Sobotka complain in point three that the defendants never moved for
a summary judgment on their action for breach of fiduciary duty and, therefore, the court erred
when it entered a summary judgment on that claim. 
DISPOSITION
      A summary judgment is proper if any of the grounds asserted for it are valid, regardless of
whether the theory upon which it was granted was wrong. Sutherland v. Caballero, 759 S.W.2d
945, 946 (Tex. 1988). Here, the court did not specify the grounds upon which it rendered
judgment. Thus, if the summary judgment on the action for tortious interference is proper on the
ground that the defendants' interference was privileged, but improper on the ground of consent,
then the summary judgment must still be upheld. See id.
      The evidence conclusively establishes that the defendants were legally justified in interfering
with Braddy's contracts with PCT. As potential lenders of $2.2 million to the company, their
interest in protecting the safety of their loan and promoting the financial health of the company
gave them rights superior or at least equal to those of Braddy in the subject matter of his contracts. 
See Sakowitz, Inc., 669 S.W.2d at 107. Consequently, in a bona fide exercise of their own rights,
the defendants could require the company to release or modify Braddy's contracts in an effort to
improve its financial condition. See Morris v. Jordan Financial Corp., 564 S.W.2d 180, 184
(Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.) (holding that a party is privileged to interfere with
the contract of another to properly protect an interest that he believes may otherwise be impaired
or destroyed by the contract's performance). Likewise, their status as preferred shareholders and
investors in PCT gave them an interest in the company's financial well-being at least equal to
Braddy's. See id. Because the evidence conclusively establishes that the defendants were
justified—in the bona fide exercise of their own rights—in interfering with Braddy's contracts with
PCT, the court properly entered a take-nothing summary judgment in their favor on Braddy's
claim of tortious interference. See Sakowitz, Inc., 669 S.W.2d at 107. Point one is overruled.
      Moreover, the evidence conclusively establishes that the demand notes were due and that the
defendants were legally justified in threatening to exercise their rights under the notes, assuming
that they made such a threat. Threatening to do something you have a legal right to do cannot
constitute duress. Simpson, 724 S.W.2d at 109. Any evidence of oral representations allegedly
made by the defendants—i.e., that the notes were to be interim in nature and were to be
superseded by a permanent financing package—was barred as a matter of law by the parol
evidence rule. See Town North Nat. Bank v. Broaddus, 569 S.W.2d 489, 491 (Tex. 1978). 
Braddy does not allege that the defendants ever impliedly or expressly represented that PCT would
not be liable on the demand notes or charge that they used any artifice, trick or device to induce
the company to execute the notes. His allegations simply represent an attempt to vary the terms
of the notes and prohibit their enforcement against the company, the type of extraneous evidence
that is excluded by the parol evidence rule. See id. Consequently, because the parol evidence rule
conclusively bars the evidence on which Braddy constructs his claim of duress—and, ultimately,
his contention that a fact issue exists on whether his consent was voluntary or given under
duress—the evidence conclusively establishes that the defendants threatened to do something they
had a legal right to do: exercise their rights under the demand notes. Such could not constitute
duress. See Simpson, 724 S.W.2d at 109. Under the circumstances, the court properly entered
a summary judgment against Braddy's action for duress.


 Point two is overruled. 
      As already discussed, Braddy alleged three causes of action in his own behalf in the second
amended petition—tortious interference with existing contracts, duress, and breach of fiduciary
duty. Sobotka, on the other hand, sued individually only for breach of fiduciary duty. Braddy
and Sobotka allege in point three that the court erred when it rendered summary judgment on their
action for breach of fiduciary duty because the defendants failed to move for a summary judgment
on that claim. To answer the question raised by the third point, we must examine the first
amended petition, the motion for summary judgment, and the second amended petition.
      Braddy and Sobotka asserted in their first amended petition claims for breach of fiduciary
duty, "both as a direct action and as a shareholder derivative action." They alleged that the
defendants (1) are fiduciaries of PCT and therefore should be held accountable under the higher
standard of care, and that (2) they breached their fiduciary duties by exercising control over PCT's
affairs in a way that benefitted themselves at the company's expense. Their breach was asserted
to be a proximate cause of PCT's damages, which were alleged to be the difference between the
company's value as an on-going concern—had the defendants not breached their fiduciary
duties—and the then current value of PCT, as well as the "corresponding diminution in the value
of Plaintiffs' shares." The amount of loss suffered by Braddy and Sobotka and by PCT was
alleged to exceed the trial court's minimum jurisdictional limit. 
      Defendants, who moved for a summary judgment on the causes of action asserted in the first
amended petition, alleged in the motion that Braddy and Sobotka could not as a matter of law
recover individually for damages sustained by PCT, even though their stock might have declined
in value as a result of the damage inflicted on the company. See Wingate v. Hajdik, 795 S.W.2d
717, 719 (Tex. 1990). Defendants contended that the plaintiffs lacked standing to assert an
individual recovery based on breach of fiduciary duties owed to the corporation.
      Apparently in response to the motion, Braddy and Sobotka filed a second amended petition
in which they dropped all derivative actions and, instead, asserted a right of recovery based solely
on the breach of a fiduciary duty owed to them, individually, rather than to PCT. They no longer
alleged, for example, that the breach was a proximate cause of the company's damage, but asserted
instead that the breach proximately caused them loss in the value of their stock. This amended
pleading, filed after the motion for summary judgment, clearly asserted only individually-held
causes of action. Rather than amending their motion for summary judgment, the defendants
elected to stand on their original motion, which sought a summary judgment on the derivative
claims for breach of fiduciary duty.
      The court granted the motion without specifying the grounds on which it acted. However,
the court could not enter a summary judgment on a ground not included in the motion. See
McConnell v. Southside School Dist., 858 S.W.2d 337, 340 (Tex.1993). Because the court
included language in the judgment that is legally equivalent to a "Mother Hubbard" clause, even
though it marked through the typed Mother Hubbard language at the bottom of the judgment, we
have jurisdiction to decide the merits of the third point.


 See Mafrige v. Ross, 866 S.W.2d 590,
592 (Tex. 1993) (holding that a final summary judgment, which grants more relief than requested
in the motion, should be reversed and remanded rather than dismissed). Therefore, we sustain
point three and reverse the portion of the judgment denying recovery on claims for breach of
fiduciary duty. Moreover, we sever Braddy's and Sobotka's claims for breach of fiduciary duty
from the actions on which the court correctly entered summary judgment and remand them for
trial. 
 
                                                                         BOB L. THOMAS
                                                                         Chief Justice
Before Chief Justice Thomas,
      Justice Vance, and
      Justice James (Retired)
Affirmed in part, reversed and remanded in part
Opinion delivered and filed November 9, 1994
Do not publish