*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

INTRASTATE DISTRIBUTORS, INC,

Plaintiff-Appellant,

v

CHAKER AOUN and GARDEN FOOD
DISTRIBUTORS, INC,

Defendants-Appellees.

UNPUBLISHED
May 18, 2023

No. 360820
Wayne Circuit Court
LC No. 21-004225-CB

Before: PATEL, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendants' motion for summary disposition on the ground that defendants' actions, as pleaded and argued, did not give rise to tort liability. We affirm.

## I. FACTS

Plaintiff is a beverage distributor based in Detroit with a distribution agreement with Essentia Water, LLC (Essentia), to act as its "exclusive" distributor in Wayne, Oakland, Macomb, Monroe, and Washtenaw Counties (the region). This agreement had several exceptions to the exclusivity provision, including that Essentia could distribute directly to certain named major retailers in the region. The agreement allowed both Essentia and plaintiff to terminate the agreement with or without cause. Plaintiff agreed that, in the event Essentia's material breach, it would provide Essentia 30 days' written notice to allow Essentia to attempt to remedy the situation.

Defendant Chaker Aoun owns Garden Food Distributors, Inc., a Michigan corporation that also distributes beverages, including Essentia's water products, to retailers in southeast Michigan. When plaintiff learned of defendants' sales of Essentia water products in the region, it sent cease-and-desist letters to defendants in August 2020 and March 2021. Defendants continued selling in the region. On March 31, 2021, plaintiff filed a complaint against defendant Aoun, and also a request for the production of all documents related to defendant Aoun's acquisition of Essentia products and sales of such products in the region. Defendant Aoun objected to the request and did not produce those documents. Plaintiff filed an amended complaint in July 2021, naming Garden

Food and Aoun as defendants that set forth claims of tortious interference with a business relationship, and tortious interference with a contract.

Plaintiff moved to compel discovery. Defendants opposed the motion on the ground that the requested documentation would reveal sensitive business information to a competitor. The trial court denied plaintiff's motion to compel discovery with prejudice, and granted defendants' motion for a protective order regarding the requested source and sales information.

Defendants also filed a motion for summary disposition. At a hearing on the motion, plaintiff's counsel contended that defendants' source for Essentia products was an unnamed distributor "out of the East Coast" who had an Essentia contract covering a different region, and that defendants were in a "conspiracy" with that distributor to market Essentia products in plaintiff's region. In their motion for summary disposition, defendants implied that their source of Essentia products was major retailers to whom Essentia retained the right to distribute directly.

The trial court granted defendants' motion for summary disposition. The trial court stated that defendants' sources of Essentia products "apparently includ[ed] large retailers, such as Wal Mart,"[1] and explained as follows:

> [K]nowingly inducing a party to breach a contract does not give rise to tort liability, at least not without additional allegations of conduct the law considers tortious. If so, then it is difficult to see how Defendants' actions in this case could be viewed differently, as Plaintiff has not otherwise identified any conduct by Defendants that the law considers tortious. Thus, Plaintiff's complaint does not state a claim, and it shall be dismissed on this basis.

This appeal followed.

## II. ANALYSIS

### A. SUMMARY DISPOSITION

Defendants' summary disposition motion invoked both MCR 2.116(C)(8) (failure to state a claim upon which relief may be granted), and (C)(10). The trial court decided the matter under (C)(8).

---

[1] When deciding motions for summary disposition, a trial court "may not make factual findings or weigh credibility." *Manning v Hazel Park*, 202 Mich App 685, 689; 509 NW2d 874 (1993). The trial court's remark about defendant's potential sources of Essentia products did not violate this principle because it did not make a finding of fact but merely expressed an observation that defendants apparently indirectly obtain Essentia bottled water without contact with the manufacturer or its bottler.

## 1.  STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition.  *Dell v Citizens Ins Co*, 312 Mich App 734, 739; 880 NW2d 280 (2015).  "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint."  *Id*. (citation omitted).  "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant."  *Id*. (citation omitted).

## 2.  ANALYSIS

"In Michigan, tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy."  *Health Call v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 89; 706 NW2d 843 (2005) (citations omitted).  "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant," resulting in damage to the aggrieved contract party.  *Id*. at 89-90 (citations omitted).  "The elements of tortious interference with a business relationship or expectancy are "(1) the existence of a valid business relationship or expectancy . . . , (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted."  *Id*. at 90 (citations omitted).

"[I]t is an essential element of a claim of tortious interference with a contract that the defendant unjustifiably instigated or induced the party to breach its contract."  *Knight Enterprises, Inc v RPF Oil Co*, 299 Mich App 275, 281; 829 NW2d 345 (2013) (quotation marks and citation omitted).  The interference may consist of either " '(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation, or (b) preventing the other from acquiring or continuing the prospective relation.' "  *Winiemko v Valenti*, 203 Mich App 411, 417; 513 NW2d 181 (1994), quoting 4 Restatement Torts, 2d, § 766B, p 20.

" 'One who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.' "  *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 382; 689 NW2d 145 (2004), quoting *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002).  "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances."  *Prysak v RL Polk Co*, 193 Mich App 1, 12-13; 483 NW2d 629 (1992).  "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference."  *CMI Int'l, Inc.*, 251 Mich App at 131.  In short, a plaintiff must "establish that 'the interferer did something illegal, unethical or fraudulent.' "  *Johnson v Mich Minority Purchasing Council*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357979); slip op at 6, quoting *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 324; 788 NW2d 679 (2010).  However, "[w]here the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference."  *BPS Clinical Laboratories v Blue Cross & Blue Shield*, 217 Mich App 687, 699; 552 NW2d 919 (1996).

Defendants argued that plaintiff's claims failed because the contractual relationship with Essentia was not terminated, breached, or otherwise disrupted, and also because their conduct did not constitute improper interference. The trial court alluded to a lack of any improper interference in its order, stating that "knowingly inducing a party to breach a contract does not give rise to tort liability, at least not without additional allegations of conduct the law considers tortious." Plaintiff does not suggest that its contractual and business relationship with Essentia ended, but argues that defendants' sales in plaintiff's contractual region disrupted that relationship. Plaintiff, in essence, contends that its contract with Essentia established a situation whereby plaintiff should be the only distributor selling Essentia products in the area, such that, any sales of Essentia products by another distributor, even one not party to the contract, constitutes a disruption. We decline to adopt plaintiff's broad interpretation of "disruption." Plaintiff cites no caselaw in which such a grievance was considered a disruption of a business relationship. Indeed, the caselaw instead abounds with instances where the defendant's conduct clearly resulted in a violated contract and an ended business relationship. See, e.g., *Wilkinson v Powe*, 300 Mich 275, 285-286; 1 NW2d 539 (1942); *Winiemko*, 203 Mich App at 417. Successful prosecution of the subject torts normally involves situations in which the defendant caused a person or entity to cancel the economic relationship it had with the plaintiff, and the plaintiff became aggrieved by the actions of both the defendant *and* the former business partner. These torts are a method for such a plaintiff to recover from the defendant and not the former business partner, even if the plaintiff might have a separate breach-of-contract claim against the business partner. Here, plaintiff desires that defendants honor its contract with Essentia to which defendants never agreed. " 'It goes without saying that a contract cannot bind a nonparty.' " *Am Federation of State, Co & Muni Employees v Wayne Co*, 292 Mich App 68, 80; 811 NW2d 4 (2011), quoting *EEOC v Waffle House, Inc*, 534 US 279, 294; 122 S Ct 754; 151 L Ed 2d 755 (2002). The contract between Essentia and plaintiff did not create a situation in which any nonparties separately distributing Essentia products in plaintiff's region were thereby engaging in tortious conduct.

If it were revealed that Essentia conspired with defendants, or a third party acting under Essentia's direction conspired with defendants, then plaintiff could argue that its relationship with Essentia had been disrupted because Essentia breached its promise of exclusivity. But plaintiff neither alleged nor argued anything against Essentia, until at the end of the final hearing, it stated that Essentia had breached the contract by "not protecting this territory." Plaintiff's contract with Essentia, however, imposed no duty on Essentia to patrol and "protect" the region from other sellers of Essentia products.

We further note that termination of the contract appears to be the remedy extended to plaintiff in the event of a material breach, with written notice to Essentia along with 30 days to allow Essentia to provide a remedy. Plaintiff did not indicate that it had provided Essentia with any such notice, or otherwise started this process. Plaintiff's last-minute, and unpersuasive, assertion of a breach by Essentia did not constitute properly pleading that plaintiff's relationship with Essentia had broken down in some way. That this element was not properly pleaded supported summary disposition under MCR 2.116(C)(8).

To state a valid claim, plaintiff also had to allege that defendants acted in an improper way. In this respect it is important to note that plaintiff and defendants are marketplace competitors. The subject torts are tools for preventing, or remedying, improper interference with business relationships, not for stifling competition or shutting down a competitor. "Improper" in this

context means more than competitive business practices, even aggressive ones. See *BPS Clinical Laboratories*, 217 Mich App at 699 (actions "motivated by legitimate business reasons" are not necessarily improper). Plaintiff asserted that defendants conspired with an outside distributor of Essentia products covering a region other than the one at issue who sold its Essentia products to defendants who then sold them in the subject region. To be improper, defendants' actions would have to be either wrongful per se, or done with malice and without justification in law for the purpose of invading plaintiff's contractual rights with Essentia. See *Derderian*, 263 Mich App at 382. The action of buying water for resale clearly would not meet the high bar of "inherently wrongful or an act that can never be justified under any circumstances". See *Prysak*, 193 Mich App at 12-13. And plaintiff does not allege any malice on the part of defendants. Defendants' conduct appears a classic instance of being "motivated by legitimate business reasons." *BPS Clinical Laboratories*, 217 Mich App at 699. Plaintiff's pleadings included no allegation that defendants ever intended to interfere with its contract with Essentia or any specific facts of any contact with Essentia.

Again, the subject torts respectively require improper interference with a business relationship or expectancy, or a contract. *Health Call,* 268 Mich App at 89-90. That defendants' actions competing in the marketplace financially affected plaintiff is not enough. Plaintiff's failure to connect defendants' actions with any breakdown of its relationship with Essentia supported the trial court's decision to grant summary disposition under MCR 2.116(C)(8). The trial court did not err because plaintiff failed to state valid claims.

## B. DISCOVERY

Plaintiff also argues that the trial court erred by denying plaintiff's discovery request and granting defendants' request for a protective order. We disagree.

## 1. STANDARD OF REVIEW

We review a trial court's discovery decisions for an abuse of discretion. *Mercy Mt Clemens Corp v Auto Club Ins*, 219 Mich App 46, 50; 55; 555 NW2d 871 (1996). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007).

## 2. ANALYSIS

"Michigan is strongly committed to open and far-reaching discovery." *In re Estate of Hammond*, 215 Mich App 379, 386; 547 NW2d 36 (1996) (citation omitted). But "a trial court must also protect the interests of the party opposing discovery so as not to subject that party to excessive, abusive, or irrelevant discovery requests." *Id*. (citation omitted). MCR 2.302(B)(1) states:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case, taking into account all pertinent factors, including whether the burden or expense of the proposed discovery outweighs its likely benefit, the complexity of the case, the importance of the issues at stake in the action, the amount in controversy, and

the parties' resources and access to relevant information. Information within the scope of discovery need not be admissible in evidence to be discoverable.

"Mere conjecture does not entitle a party to discovery, because such discovery would be no more than a fishing expedition." *Davis v Detroit*, 269 Mich App 376, 380; 711 NW2d 462 (2005).

Plaintiff requested "[a]ll purchase orders, invoices, delivery slips, and other records" related to defendants' "sale, distribution, or delivery of Essentia Waters' Products" in the territory at issue, and to defendants' "acquisition of Essentia Waters' Products from any source." Plaintiff argues that this discovery would reveal an alleged conspiracy with an out-of-state distributor, but does not explain why plaintiff so firmly believed that such a conspiracy existed in the first instance. That, considered along with plaintiff's failure, in pleading and arguments, to set forth adequate factual allegations to state tortious interference claims, as discussed above, indicates that plaintiff relied on mere conjecture for its very broad discovery request. The record reflects that defendants expressed very reasonable concerns about revealing such information to a competitor. If the requested information were revealed, plaintiff—now armed with detailed pricing and quantity information—could use it to approach defendants' retailers and solicit their business. Even assuming that no such cynical underlying motive existed for the discovery request, we think it obvious that plaintiff could gain an undeserved competitive advantage by obtaining such information without having properly alleged valid claims against defendants. For these reasons, we conclude that the trial court's decision to deny plaintiff such discovery did not fall outside the range of principled outcomes.

Affirmed.

/s/ Sima G. Patel
/s/ Mark J. Cavanagh
/s/ James Robert Redford